*This opinion is subject to revision before final publication in the Pacific Reporter*

**2019 UT 35**

IN THE

## SUPREME COURT OF THE STATE OF UTAH

YOLANDA VEGA,
*Appellant,*

*v.*

JORDAN VALLEY MEDICAL CENTER, LP,[1]
*Appellees.*

No. 20170866
Filed July 19, 2019

On Direct Appeal

Third District, Salt Lake
The Honorable Katie Bernards-Goodman
No. 170900581

Attorneys:

Troy L. Booher, Beth E. Kennedy, Michael J. Teter, G. Eric Nielson,
Mark W. Dahl, Lena Daggs, Salt Lake City, for appellant

Rodney R. Parker, Derek J. Williams, Nathanael J. Mitchell, Brian P.
Miller, Frederick Mark Gedicks, Shawn McGarry, Kirk G. Gibbs,
David C. Epperson, Salt Lake City, for appellees

JUSTICE HIMONAS authored the opinion of the Court in which
CHIEF JUSTICE DURRANT, ASSOCIATE CHIEF JUSTICE LEE,
JUSTICE PEARCE, and JUSTICE PETERSEN joined.

JUSTICE HIMONAS, opinion of the Court:

---

[1] RYAN CAVANESS, RN; PHYSICIAN GROUP OF UTAH, INC.;
KRISTOFER MITCHELL, M.D.; TRACY SYDDALL, PA-C; ROBERT SWIFT,
M.D.; INTERMOUNTAIN ANESTHESIA CONSULTANTS LC; and ANGELA
SALERNO, CRNA; are also parties to this appeal.

## INTRODUCTION

¶1 For reasons still unknown, Gustavo Vega, an otherwise healthy forty-four-year-old male, went in for a routine gallbladder operation and came out in a coma. He died a week later. His wife, Yolanda Vega, brought a medical malpractice action against Jordan Valley Medical Center and all related medical providers who were involved in Mr. Vega's care. The district court dismissed Ms. Vega's action pursuant to section 78B-3-423(7) of the Utah Health Care Malpractice Act[2] because she failed to obtain a certificate of compliance from the Division of Occupational and Professional Licensing (DOPL). On appeal Ms. Vega challenges the constitutionality of the Malpractice Act on several grounds. We hold that the Malpractice Act violates Article VIII, section I of the Utah Constitution—the judicial power provision—by allowing DOPL to exercise the core judicial function of ordering the final disposition of claims, like those brought by Ms. Vega, without judicial review. Accordingly, we find the offending provisions in the Act unconstitutional, reverse the district court's grant of appellees' motion to dismiss, and remand this case for a determination on the merits.

## BACKGROUND

¶2 In 2014, Gustavo Vega underwent a routine procedure to have his gallbladder removed.[3] But after the conclusion of the surgery, Mr. Vega did not wake up. Mr. Vega had a CT scan that revealed "low lung volumes" and neurologists diagnosed him with an anoxic brain injury that occurred during the surgery or immediately afterwards. A cardiologist was consulted and noted in the record that the "events immediately following that [gallbladder] surgery are not clear to me." Mr. Vega died a week after the surgery

---

[2] At the time Ms. Vega filed her suit, section 78B-3-423(7) was numbered as section 78B-3-423(6). Because the texts of the two provisions are identical, we cite to the current version of the statute—section 78B-3-423(7).

[3] Appellees moved to dismiss Ms. Vega's complaint pursuant to Utah Rules of Civil Procedure 12(b)(1) and 12(b)(6). For purposes of our factual recitation, we treat rule 12(b)(1) and rule 12(b)(6) motions alike: "factual allegations are accepted as true and all reasonable inferences to be drawn from those facts are considered in a light most favorable to the plaintiff." *Mallory v. Brigham Young Univ.*, 2014 UT 27, ¶ 32 n.1, 332 P.3d 922 (Stone, J., dissenting).

at the age of forty-four. Following his death, Ms. Vega, his wife of twenty years, prepared to file this malpractice action under the Utah Health Care Malpractice Act, UTAH CODE § 78B-3-401 to -426.

¶3 By way of background, the Malpractice Act requires plaintiffs to obtain a certificate of compliance from DOPL before filing their case in district court. UTAH CODE § 78B-3-412(1)(b). This was not always the case. Prior to 2010, the Malpractice Act only required that plaintiffs submit to a non-binding prelitigation hearing. *See* UTAH CODE § 78B-3-416(1) (2009). Regardless of the outcome of the prelitigation hearing, plaintiffs were permitted to file their claims in district court; no certificate of compliance was required. *Id.* However, under the current regime, as enacted through the 2010 amendments, a certificate of compliance is a prerequisite to a plaintiff filing a medical malpractice action in district court. UTAH CODE § 78B-3-412(1)(b).

¶4 Pursuant to the Malpractice Act, Ms. Vega filed her notice of intent to commence this action. *Id.* § 78B-3-412(1)(a).[4] Parties that file this notice are then required to present their case to a prelitigation panel that consists of a doctor, a lawyer, and a layperson. *Id.* § 78B-3-416(4)(a)–(c). The prelitigation panel "proceedings are informal, nonbinding and . . . are compulsory as a condition precedent to commencing litigation." *Id.* § 78B-3-416(1)(c). The formal rules of evidence do not apply to these hearings and discovery is only permitted by a finding of "special order of the panel, and for good cause shown demonstrating extraordinary circumstances." *Id.* § 78B-3-417(4). DOPL may also "issue subpoenas for medical records directly related to the claim of medical liability." *Id.* § 78B-3-417(2). The panel must determine whether "each claim against each health care provider has merit or has no merit." *Id.* § 78B-3-418(2)(a)(i). If the panel finds that a plaintiff's claim has merit, DOPL issues a certificate of compliance for each meritorious claim, *id.* § 78B-3-418(3)(a), and the plaintiff can then file the case in district court, *id.* § 78B-3-412(1)(b).

---

[4] "A malpractice action against a health care provider may not be initiated unless and until the plaintiff . . . gives the prospective defendant or his executor or successor, at least 90 days' prior notice of intent to commence an action." UTAH CODE § 78B-3-412(1). Once a plaintiff files a notice of intent, DOPL then has 180 days to complete a prelitigation panel review of the plaintiff's claims. *Id.* § 78B-3-416(3)(b).

¶5   If the panel decides that a plaintiff's claim lacks merit, the Malpractice Act permits the plaintiff to nonetheless compel DOPL to issue a certificate of compliance by obtaining an affidavit of merit from a health care provider. *Id.* § 78B-3-423(1). DOPL will issue a certificate of compliance for a claim if the affidavit of merit includes a statement that the plaintiff or the plaintiff's attorney "consulted with and reviewed the facts of the case with a health care provider who has determined after a review of the medical record and other relevant material involved in the particular action that there is a reasonable and meritorious cause for the filing of a medical liability action." *Id.* § 78B-3-423(2)(a). An affidavit of merit from a health care provider must state that:

> (i) in the health care provider's opinion, there are reasonable grounds to believe that the applicable standard of care was breached;
>
> (ii) in the health care provider's opinion, the breach was a proximate cause of the injury claimed in the notice of intent to commence action; and
>
> (iii) the reasons for the health care provider's opinion.

*See id.* § 78B-3-423(2)(b).

¶6   Ms. Vega attempted to obtain a certificate of compliance through DOPL's prelitigation panel. But the panel determined that Ms. Vega's claim lacked merit.

¶7   Having received a finding of no merit from the prelitigation panel, Ms. Vega's only other option to obtain a certificate of compliance was through an affidavit of merit. *See id.* Ms. Vega retained Dr. Myer Rosenthal, a doctor at the Stanford University School of Medicine, to provide the necessary affidavit. Dr. Rosenthal was able to certify that he believed there were reasonable grounds to believe there was a breach in the standard of care that proximately caused the death of Mr. Vega, but he could not provide the details and reasoning for his opinion based on the medical record. Dr. Rosenthal stated that he "cannot specifically comment on the actions of the Respondents that constitute breaches in the standard of care due to the inadequacy of the medical records provided to [Ms. Vega]"and that "[t]he circumstances surrounding Mr. Vega's injury are highly suspect." DOPL determined that Ms. Vega's affidavit was inadequate and asked Ms. Vega to file an amended affidavit. Because Ms. Vega did not provide an amended affidavit, and so did not comply with DOPL's requirements, Ms. Vega did not obtain a certificate of compliance.

¶8 Ms. Vega filed suit against appellees four months later without the certificate of compliance. Appellees filed a motion to dismiss with prejudice citing Utah Code section 78B-3-423(7) of the Malpractice Act, which states that "[i]f a claimant or the claimant's attorney does not file an affidavit of merit as required . . . the division may not issue a certificate of compliance for the claimant and the malpractice action *shall be dismissed by the court*." (emphasis added). Ms. Vega opposed the motion to dismiss, arguing that the Malpractice Act violated several provisions of the Utah Constitution. Specifically, Ms. Vega argued that the Malpractice Act violates the separation of powers doctrine, the wrongful death provision, the open courts clause, the uniform operation of laws clause, and the due process clause of the Utah Constitution. Citing the inadequacy of prelitigation discovery and the lack of clear physician notes, the district court determined that "it [was] impossible [for Ms. Vega] to comply with what DOPL is asking," and therefore Ms. Vega could never cure the deficiency in her affidavit. The district court further determined that dismissing the case without prejudice to allow Ms. Vega to seek the opinion of another expert would be futile. Accordingly, the district court granted the motion to dismiss with prejudice.[5]

¶9 Ms. Vega appealed to this court, preserving her claims that the Malpractice Act violates the separation of powers provisions, the wrongful death provision, the due process clause, the open courts provision, and the uniform operation of laws provision of the Utah Constitution.

¶10 We exercise jurisdiction under Utah Code section 78A-3-102(3)(j).

---

[5] The district court applied the plain language of the statute and decided to "let the higher court make the decisions" regarding its constitutionality. This hands-off approach to constitutional questions fundamentally misunderstands the obligations of a district court judge. While this court has the final say as to constitutional interpretation, the judicial function of the lower courts is not optional; it is the duty of the courts to reason through each case and issue decisions based on sound and thorough legal analysis, including constitutional analysis. We are meant to be the final review—not the only review—of such issues.

**STANDARD OF REVIEW**

¶11 We review constitutional and statutory interpretation issues for correctness, granting no deference to the district court. *Schroeder v. Utah Attorney Gen.'s Office*, 2015 UT 77, ¶ 16, 358 P.3d 1075.

**ANALYSIS**

¶12 Ms. Vega's facial challenge to the Malpractice Act raises several important issues of constitutional law. We presume that legislative enactments are constitutional and where possible will construe them as complying with our state and federal constitutions. *See State v. Drej*, 2010 UT 35, ¶ 9, 233 P.3d 476. The presumption of constitutionality also means that we will seek to resolve doubts about a statute's validity in favor of constitutionality, and will not declare a legislative enactment invalid unless it clearly violates a constitutional provision. *See, e.g.*, *State v. Angilau*, 2011 UT 3, ¶ 7, 245 P.3d 745; *Merrill v. Utah Labor Comm'n*, 2009 UT 26, ¶ 5, 223 P.3d 1089; *In re Estate of S.T.T.*, 2006 UT 46, ¶ 26, 144 P.3d 1083; *Jones v. Utah Bd. of Pardons & Parole*, 2004 UT 53, ¶ 10, 94 P.3d 283. Moreover, in a facial challenge to a statute, like Ms. Vega's, we will only overturn the will of the legislature when "the statute is so constitutionally flawed that no set of circumstances exists under which the [statute] would be valid." *Gillmor v. Summit Cty.*, 2010 UT 69, ¶ 27, 246 P.3d 102 (alteration in original) (citation omitted) (internal quotation marks omitted).

¶13 Ultimately, we conclude that Utah Code section 78B-3-412(1)(b), which requires a certificate of compliance from DOPL in order for a plaintiff, like Ms. Vega, to initiate a malpractice action against a health care provider, is unconstitutional. Accordingly, those sections of the Malpractice Act that require a plaintiff to obtain a certificate of compliance prior to filing a lawsuit in the district court must be stricken from the Act. Additionally, we declare the language in Utah Code section 78B-3-423(7), which mandates a dismissal of any malpractice action filed without a certificate of compliance, to be unconstitutional. Because section 423 cannot stand alone or serve a purpose without section 423(7), we find the entirety of section 423 and all language throughout the act that refers to affidavits of merit to be unconstitutional.

I. OUR SEPARATION OF POWERS AND CORE JUDICIAL FUNCTIONS JURISPRUDENCE

¶14 Ms. Vega's challenge to the statutory regime implicates two related, but distinct, constitutional provisions: the separation of powers ensconced in Article V and the judicial power vested in Article VIII. Article V, section I of the Utah Constitution states:

> The powers of the government of the State of Utah shall be divided into three distinct departments, the Legislative, the Executive, and the Judicial; and no person charged with the exercise of powers properly belonging to one of these departments, shall exercise any functions appertaining to either of the others, except in the cases herein expressly directed or permitted.

And Article VIII, section I states in relevant part: "The judicial power of the state shall be vested in a Supreme Court, in a trial court of general jurisdiction known as the district court, and in such other courts as the Legislature by statute may establish."

¶15 While Article V regulates and guides the apportionment of authority and function between the branches of government, the core judicial power vested in the courts by Article VIII is always retained by the judiciary—regardless of whether the party attempting to exercise a core judicial function belongs to another branch of the government.[6] In interpreting Article VIII we have said

---

[6] We also take this opportunity to clarify the holding in *Jones v. Utah Board of Pardons & Parole*, 2004 UT 53, 94 P.3d 283. In *Jones*, we held that the statute empowering the Board of Pardons and Parole to issue retaking warrants did not violate Article V or Article VIII. With respect to the core judicial function challenge under Article VIII, we reasoned that because the Board of Pardons and Parole was not a court of record, our line of core judicial function cases did not apply in an analysis of the limits of the Board's powers. *Id.* ¶ 17. We also noted that, in any event, the ability to issue retaking warrants was not a core judicial function. *Id.* ¶ 20. However, we now disclaim any of the dicta in *Jones* suggesting that our core judicial function jurisprudence does not apply outside of courts of record. Because we held that issuing retaking warrants was not a core judicial function, it was immaterial whether the retaking warrants were being issued by a court of record or a court not of record, and the discussion regarding courts of record is dicta. Core judicial functions under Article VIII remain the province of the judiciary and "to the extent that [any grant of authority] purports to vest ultimate judicial power . . . in persons who have not been duly appointed as article VIII judges," within or without courts of record, we retain the ability to carefully circumscribe constitutional limits and safeguard the judicial power vested in Article VIII section I. *Salt Lake City v. Ohms*,

(continued . . .)

that the "explicit vesting of jurisdiction in the various courts of the state is an implicit prohibition against any attempt to vest such jurisdiction elsewhere." *Salt Lake City v. Ohms*, 881 P.2d 844, 849 (Utah 1994). Additionally, the "[c]ore functions or powers of the various branches of government are clearly nondelegable under the Utah Constitution." *Id.* at 848. Notably, the core judicial function of courts includes "the power to hear and determine controversies between adverse parties and questions in litigation." *Timpanogos Planning & Water Mgmt. Agency v. Cent. Utah Water Conservancy Dist.*, 690 P.2d 562, 569 (Utah 1984) (internal quotation marks omitted). However, "[c]ore judicial functions do not include functions that are generally designed to assist courts, such as conducting fact finding hearings, holding pretrial conferences, and making recommendations to judges." *State v. Thomas*, 961 P.2d 299, 302 (Utah 1998) (internal quotation marks omitted). The notable distinction—between assistance and authority—implicates the ultimate power to dispose of a claim or cause of action. We have clearly stated that it is unconstitutional for anyone but "duly appointed judges" subject to "constitutional checks and balances" to adjudicate cases and enter final judgments. *See Ohms*, 881 P.2d at 851, 855. Because we find that the Malpractice Act violates Article VIII's grant of the judicial power, we need not examine Ms. Vega's Article V arguments.

## II. DOPL EXERCISES CORE JUDICIAL FUNCTIONS UNDER THE UTAH MEDICAL MALPRACTICE ACT IN VIOLATION OF ARTICLE VIII SECTION I OF THE UTAH CONSTITUTION

¶16 There is a clear line between permissible statutory prescriptions for pretrial conferencing or litigation assistance, and full-on encroachments of the judicial power. The legislature can establish pretrial panels, commissioners, and all kinds of assistance for a judicial determination without running afoul of Article VIII. However, the 2010 enactments and amendments to the Malpractice Act, which require dismissal of an action absent a certificate of compliance from DOPL, exceed any offer of mere assistance to the courts and instead ultimately represent an exercise of core judicial functions.

¶17 Again, when reviewing the construction of statutes, "[t]he general rule is that statutes, where possible, are to be construed so as to sustain their constitutionality." *Gallivan v. Walker*, 2002 UT 89,

---

881 P.2d 844, 855 (Utah 1994). Any extraneous language in *Jones* that contradicts this reality is hereby disclaimed.

¶ 87, 54 P.3d 1069 (citation omitted) (internal quotation marks omitted). Therefore, "if a portion of the statute might be saved by severing the part that is unconstitutional, such should be done." *State v. Lopes*, 1999 UT 24, ¶ 18, 980 P.2d 191 (citation omitted) (internal quotation marks omitted). "[W]e look to legislative intent" to determine whether or not a statutory subsection is severable from the whole scheme. *Gallivan*, 2002 UT 89, ¶ 88 (citation omitted) (internal quotation marks omitted). This means that we examine legislative intent and ask whether the legislature would have intended to enact the statute with the stricken provision severed. If, as in this case, there is no severability provision in the statute, or, more generally, if the legislature's intent is not expressly stated, we "turn to the statute itself, and examine the remaining constitutional portion of the statute in relation to the stricken portion. If the remainder of the statute is operable and still furthers the intended legislative purpose, the statute will be allowed to stand." *Midvale City. Corp. v. Haltom*, 2003 UT 26, ¶ 54, 73 P.3d 334 (citation omitted) (internal quotation marks omitted); *see also Berry ex rel. Berry v. Beech Aircraft Corp.*, 717 P.2d 670, 686 (Utah 1985) (articulating that legislative intent may be determined by asking "whether the remaining portions of the act can stand alone and serve a legitimate legislative purpose").

¶18  As discussed above, section 418 of the Malpractice Act mandates that plaintiffs participate in a prelitigation panel after filing their notice of intent. After a would-be plaintiff has compiled their case and brought it before the panel, the panel "render[s] its opinion in writing . . . and determine[s] on the basis of the evidence whether . . . each claim against each health care provider has merit or has no merit." UTAH CODE § 78B-3-418(2)(a). Based on this proceeding the panel renders an opinion on the claimant's case. Fine. However, section 418(2)(b) also provides that "[t]here is no judicial or other review or appeal of the panel's decision or recommendations." Therefore, the framework created by the 2010 enactments and amendments, specifically Utah Code section 78B-3-412(1)(b)—which makes the certificate of compliance mandatory in order to file a medical malpractice case in court—and Utah Code section 78B-3-423(7)—which mandates that the courts dismiss all actions in which a certificate of compliance has not been issued—function to give DOPL the power to finally dispose of claims at the direct expense of the judiciary.[7] The facts of Ms. Vega's case have

---

[7] Prior to 2010, the fact that the panel opinion could not be reviewed by a court did not create a constitutional problem.

(continued . . .)

illustrated this constitutional problem with the offending sections of the Malpractice Act.

¶19   As discussed, section 78B-3-412(1)(b) mandates that a plaintiff receive a certificate of compliance from DOPL before initiating a malpractice action in court. If a plaintiff files a malpractice action in court without having received a certificate of compliance from DOPL, "the malpractice action shall be dismissed." UTAH CODE § 78B-3-423(7). If this was a mere non-discretionary prerequisite, and DOPL was simply tasked with ensuring that Ms. Vega had complied with the statute's paperwork, marshalling, and claims articulation standards, it may have passed constitutional muster. However, DOPL does—and in Ms. Vega's case, did—exercise discretion both in its assessment of the merits of claims at prelitigation panel hearings, and again in its approval or rejection of a claimant's affidavit of merit. And, because section 412(1)(b) makes it so that a malpractice action "may not be initiated" without a certificate of compliance, and section 423(7) mandates that malpractice actions filed without a certificate of compliance "shall be dismissed by the court," DOPL's discretion operates by design in complete insulation from the courts; the interplay between section 412(1)(b), section 423(7), and section 418(2)(b) vests DOPL with the power to hear and determine the final disposition of controversies between parties. The cumulative action of this statutory regime violates Article VIII, section I.

¶20   If there is no review or appeal to the courts, then the ruling of the panel is not a recommendation or an opinion—it is an authoritative and final ruling on whether a claim has merit. It is a total disposition of a case, outside of the courts, without any standard judicial process or the consent of the parties. And as we said in *Salt Lake City v. Ohms*, "the ultimate judicial power of entering final judgments" belongs to the courts alone. 881 P.2d 844, 855 (Utah 1994).[8] "The term judicial power of courts is generally

---

Would-be claimants could still file their actions in court regardless of the determination made by DOPL; Utah Code section 78B-3-418(2)(b) did not fundamentally abridge the judicial power because the panel's decision, while not reviewable, did not impact whether a claimant could file in court.

[8] This is different in kind from offering assistance to judges. While a judge "can utilize referees, court commissioners, and other assistants for various purposes, those persons cannot exercise that

(continued . . .)

understood to be the power to hear and determine controversies between adverse parties and questions in litigation." *Id.* at 849 (internal quotation marks omitted). It is the power to make that final determination that the Malpractice Act vests unassailably in DOPL. The panel heard Ms. Vega's case and made a determination. And it did so—by design—in complete isolation from the courts, the proper wellspring of the judicial power.[9] Without judicial review of the panel opinion—or the ability to file in court regardless of the panel's determination—the panel has exercised the judicial power in violation of Article VIII, section I.

¶21   As previously stated, section 423 explains the requirements for a claimant seeking to file an affidavit of merit with DOPL. But what if, as it did here, DOPL finds such an affidavit insufficient? Under Utah Code section 78B-3-423(7), "the division may not issue a certificate of compliance for the claimant and the malpractice action shall be dismissed by the court." And, like the prelitigation panel's opinion of merit, there is no review or appeal of this decision. Appellees and amicus curiae make much of the restrictions placed on DOPL in assessing the adequacy of an affidavit of merit. In their views, DOPL cannot reject a compliant affidavit and cannot certify a deficient one. No discretion, no problem. But this omits the most important question: who decides whether an affidavit is sufficient or compliant? In this case, DOPL found that Dr. Rosenthal's affidavit satisfied sections 423(2)(b)(i) and (ii) of the statutory regime. However, DOPL asserted that Dr. Rosenthal's affidavit was insufficient because Dr. Rosenthal did not give a satisfactory reason for his opinion in compliance with section 423(2)(b)(iii). Dr. Rosenthal noted that because the records regarding Mr. Vega's surgery were inadequate, he could not give more specific reasons for his opinion. He stated only that "there are reasonable grounds to believe" that the standards of care were breached in Mr. Vega's case. The ability to determine that the quality of his reasoning was

judge's ultimate judicial power, for such is a nondelegable core judicial function." *Ohms*, 881 P.2d at 848.

[9] This case is about ultimate authority. Who is it that enforces the judgment of DOPL? It is DOPL exclusively, and with authority properly belonging to the courts. "[C]ore judicial powers include the *authority* to hear and determine justiciable controversies as well as the authority to enforce any valid judgment, decree or order. *Ohms*, 881 P.2d at 849 (citation omitted) (internal quotation marks omitted).

inadequate reveals a monumental discretionary grant to DOPL; the rejection of Dr. Rosenthal's affidavit was an exercise of a core judicial function by DOPL.

¶22   To be clear, we do not intend to nitpick whether this decision was right or wrong. That is not the problem. Rather we simply highlight the obvious truth: *it was a decision* to find Dr. Rosenthal's statement regarding the reasons for his opinion to be inadequate. Dr. Rosenthal stated that he could not "specifically comment on the actions of the Respondents that constitute breaches in the standard of care due to the inadequacy of the medical records." It is unclear why DOPL determined that this is not an adequate reason, or merely *a reason*, for his opinion and therefore not a satisfactory answer to subsection 423(2)(b)(iii). But even if Dr. Rosenthal's affidavit was indeed inadequate, the real issue is who gets to make that final determination: DOPL. It may be true that section 418(3) compels DOPL to certify all compliant affidavits. But DOPL shall issue certification only if, *in its own determination*, the plaintiff complied. And its determination is not subject to judicial review or appeal. This violates our grant of judicial power under Article VIII.

¶23   We understand and appreciate that rising health care costs are a tremendous problem facing both our state and the nation writ large. So too is it completely within the purview of the legislature to decide how and where to tackle this problem. If, in the legislature's judgment, frivolous lawsuits are a major contributing factor to increased costs of care, it has the power and prerogative to attempt to mitigate any and all deleterious effects. However, regardless of the wisdom of any such approach, the legislature's solution is still subject to the Utah Constitution, which vests judicial power in the courts under Article VIII, section I. This judicial power cannot be abrogated or eliminated by statute. But that is what the 2010 amendments to the Malpractice Act did by empowering DOPL to make final judgments and dispose of claims unbound from and isolated from a judicial check and supervision of its authority.

¶24   Because the Malpractice Act remains operable without section 412(1)(b) and section 423(7), we leave intact and find constitutional the rest of the amended statute. We believe that the Malpractice Act as it existed prior to its amendment in 2010 may continue to serve a purpose once Utah Code section 78B-3-412(1)(b) and Utah Code section 78B-3-423(7) have been excised. However, all of section 423—the section that outlines the procedures for obtaining an affidavit of merit—and all language throughout the amended act that refers to affidavits of merit must also be found unconstitutional.

As we noted above, in severing the offending portions of a statutory enactment we ask "whether the remaining portions of the act can stand alone and serve a legitimate legislative purpose." *Berry ex rel. Berry v. Beech Aircraft Corp.*, 717 P.2d 670, 686 (Utah 1985). Once section 423(7) is removed there is no longer any reason why a claimant would pursue an affidavit of merit. A panel decision finding that a claim is without merit will not stop a plaintiff from filing in court, and so all procedures for securing a certificate of compliance via an affidavit of merit will never be used. This portion therefore serves no further purpose. The Malpractice Act in its entirety, however, still prescribes useful noticing procedures, and the prelitigation panel functions to guide and solidify claims before they reach court. We envision this judgment as a partial return to the pre-2010 regime, in which the prelitigation panel was free to operate in its role as an advisory committee charged with reviewing a plaintiff's action and issuing an opinion as to merit. That opinion remains unreviewable under section 418 but, without section 412(1)(b) and section 423, the panel's review remains merely an opinion and is thereby subservient to the courts' power to hear and dispose of a plaintiff's case.

## CONCLUSION

¶25   Article VIII, section I of the Utah Constitution vests the judicial power of the state in the Supreme Court "and in such other courts as the Legislature by statute may establish." The 2010 amendments to the Malpractice Act empower DOPL to hear and dispose of medical malpractice claims on a final non-appealable basis in violation of Article VIII. We therefore hold that Utah Code section 78B-3-412(1)(b) and Utah Code section 78B-3-423 are facially unconstitutional and remand Ms. Vega's case to the district court to be tried on its merits. Reversed.