*This opinion is subject to revision before final publication in the Pacific Reporter*

**2020 UT 55**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

ALBERTO RAMOS
*Petitioner,*

*v.*

COBBLESTONE CENTRE; UTAH BUSINESS INSURANCE CO.; and UTAH
LABOR COMMISSION
*Respondents.*

No. 20190348
Heard May 22, 2020
Filed July 31, 2020

On Certification from the Utah Court of Appeals

Attorneys:

Loren M. Lambert, Midvale, for petitioner

Jeffrey A Callister, Chad P. Curtis, Salt Lake City, for respondents
Cobblestone Centre and Utah Business Insurance Co.

Christopher C. Hill, Salt Lake City, for respondent Utah Labor
Commission

CHIEF JUSTICE DURRANT authored the opinion of the Court, in
which ASSOCIATE CHIEF JUSTICE LEE, JUSTICE HIMONAS,
JUSTICE PEARCE, and JUSTICE PETERSEN joined.

CHIEF JUSTICE DURRANT, opinion of the Court:

**Introduction**

¶1    Mr. Ramos appeals the amount of an award for permanent
partial disability under the Workers' Compensation Act (WCA).[1]
Pursuant to Labor Commission (Commission) guidelines, the
administrative law judge based the amount of Mr. Ramos's award

---

[1] *See* UTAH CODE §§ 34A-2-101 to -1005.

on a report provided by an assigned medical panel. Mr. Ramos argues that this process for determining permanent partial disability benefits is unconstitutional.

¶2　Mr. Ramos argues that the Commission's process for determining disability benefits is unconstitutional in two respects. First, Mr. Ramos argues the Commission's use of medical panels is unconstitutional because it delegates to medical panels the administrative law judge's authority to adjudicate WCA claims. Second, he argues that the Commission's rule adopting the 2006 Supplemental Impairment Rating Guide (Utah Guidelines) and the 5th Edition of the American Medical Association's Guides to the Evaluation of Permanent Impairment (AMA Guidelines) violates various provisions of the federal and Utah constitutions because it provides an arbitrary method for assigning impairment ratings that results in constitutionally inadequate compensation.

¶3　We reject Mr. Ramos's assertion that the Commission's process for determining permanent partial disability benefits is unconstitutional. First, we hold that the Commission has not unconstitutionally delegated to medical panels the authority of administrative law judges to adjudicate workers' compensation benefits. Medical panels merely assist administrative law judges in exercising their adjudicative authority. Second, we decline to reach the merits of Mr. Ramos's other constitutional claims challenging the Utah Guidelines' method for assigning impairment ratings because he has not adequately briefed them.

¶4　In addition to his constitutional arguments, Mr. Ramos asserts the administrative law judge erred in failing to augment the medical panel's impairment rating by 3 percent, resulting in an increased compensation award. He argues that, because of his subjective pain, he is entitled to this increased compensation. We disagree. We conclude that the administrative law judge was not permitted to increase the amount of Mr. Ramos's award in the way Mr. Ramos suggests.[2]

---

[2] Cobblestone Centre (Cobblestone) argues Mr. Ramos's appeal is moot because he does not challenge the medical panel's report and assigned impairment rating, only the Commission's process in determining his award. Because Mr. Ramos could have been entitled to a new hearing and a new determination of benefits before the Commission had we ruled in his favor on any of his

(Continued)

## Background

¶5   While he was employed by Cobblestone, Mr. Ramos assembled and moved metal trestles weighing about 300 pounds. One day, he and his co-worker were loading a trestle on a forklift when the trestle fell, temporarily pinning Mr. Ramos and bending his left knee inward. He received medical treatment that same day and, after an MRI, was diagnosed with an MCL tear and "compressive bone marrow edema and microfractures involving the postoerolateral aspect of both the lateral femoral condyle and the fibular head." After receiving treatment for his injury, Mr. Ramos did not "achieve 100% recovery" and "was left with a residual limp," a "significant bump on the side of his left knee," and residual pain "that interferes with his activities." As a result, he filed a claim for permanent partial disability benefits with the Commission.

¶6   Permanent partial disability, one of the benefits provided by the WCA, provides compensation for workers who become permanently impaired because of a workplace accident.[3] The WCA provides an express list of some of these impairments, and includes a specific compensation schedule.[4] In addition to the schedule provided in the statute, the legislature has granted the Commission the authority to provide benefits for permanent impairments that are not on its express list, so long as the Commission bases a compensation award on "medical evidence," and the award is "proportionate" to the schedule provided in the statute.[5]

¶7   To help in its efforts to provide proportionate awards for permanent impairments not expressly listed in the statute—like Mr. Ramos's impairment—the Commission has adopted a rule requiring medical providers to use the Utah Guidelines in order to diagnose an impairment, and then to assign a numerical value, referred to as an impairment rating.[6] This same rule also adopts the

---

claims, the parties' rights could have been affected by this appeal. As a result, his appeal is not moot.

[3] UTAH CODE § 34A-2-412.

[4] *Id.* § 34A-2-412(4).

[5] *Id.* § 34A-2-412(6).

[6] UTAH ADMIN. CODE r. 612-300-9(A) (2019).

AMA Guidelines, which apply when the Utah Guidelines fail to address a specific impairment.[7]

¶8 According to the Commission, the Utah Guidelines provide uniformity and consistency in the diagnostic and rating process among different medical providers.[8] They accomplish this by specifying objective medical diagnoses, in which medical providers consider various factors—including the method of injury, initial presentation of the injury, radiological findings, and subsequent limitations—and then provide categories based on the severity of these factors.[9] After the medical provider diagnoses and categorizes an injury, the Utah Guidelines provide an assigned numerical value.[10] This numerical value is referred to as an impairment rating, which the Commission's administrative law judge utilizes to calculate a permanent partial disability compensation award.[11]

¶9 Mr. Ramos's impairment was not expressly listed in the schedule provided in Utah Code section 34A-2-412. As a result, in filing a permanent partial disability claim, he submitted evidence that his treating physical therapist determined that his impairment constituted a "whole person impairment rating of 6 [percent]." On the other hand, his employer's physician conducted a medical examination, and determined that "there was no objective evidence to support that [Mr. Ramos] had any impairment." Because of the conflicting medical evidence, the administrative law judge was required, by rule, to appoint a medical panel in order to provide an independent assessment. Utilizing the Utah Guidelines, the medical panel diagnosed Mr. Ramos with a lower extremity painful organic syndrome and concluded that his impairment constituted a 1-percent-whole-person impairment rating. The medical panel submitted its findings in a report to the administrative law judge.

---

[7] *Id.* r. 612-300-9(B) (2019).

[8] UTAH LABOR COMM'N, UTAH LABOR COMMISSION'S 2006 SUPPLEMENTAL IMPAIRMENT RATING GUIDES § 1.1b.iv (hereinafter Utah Guidelines).

[9] *See, e.g.*, *id.* § 5.2b.

[10] *Id.* § 1.0a.

[11] *Id.*; UTAH CODE § 34A-2-601(2)(b).

¶10 After receiving the medical panel's report, Mr. Ramos objected. He claimed that he was entitled to a higher impairment rating based on his persistent pain and continuing limitations. In a declaration he submitted in support of his objection, Mr. Ramos stated that, at his new place of employment, he cannot work a full day "without any pain or difficulties." He also stated that he experiences pain after walking for ninety minutes, sitting for an hour, walking up three to four flights of stairs, running for more than ten minutes, or playing soccer for more than five minutes. After considering Mr. Ramos's objection and declaration, the administrative law judge asked the medical panel to review the additional evidence and provide a supplemental report.

¶11 After it reviewed Mr. Ramos's objection and declaration, the medical panel maintained that his impairment constituted a 1-percent-whole-body impairment rating. It submitted its determination to the administrative law judge, along with its reasons supporting that determination, in a supplemental report. Mr. Ramos objected to the supplemental report, arguing that the panel's assessment was incorrect, resulting in an impairment rating that was too low. He made various challenges to the panel's findings, including those regarding (1) the mechanism for injury;[12] (2) the initial presentation of injury;[13] (3) the radiological assessment; and (4) his limitations. And he asked that the administrative law judge increase the panel's assigned impairment rating based on his ongoing subjective pain.

¶12 Mr. Ramos also challenged the constitutionality of the Utah Guidelines, which the panel relied on in its assessment of Mr. Ramos's impairment. He argued that the methods provided in the Utah Guidelines for diagnosing and assigning impairment ratings are arbitrary and fail to serve the purpose of the WCA.

¶13 The judge rejected Mr. Ramos's objections. First, she reviewed the challenged findings, taking into account Mr. Ramos's

---

[12] "Mechanism of injury" refers to the manner in which the injury occurred. *See JP's Landscaping v. Labor Comm'n*, 2017 UT App 59, ¶¶ 21–32, 397 P.3d 728; *see also* Utah Guidelines § 5.3a (providing an example of a car running over a person's foot as a "moderate" mechanism of injury).

[13] The "initial presenting signs" of an injury include a medical provider's objective observations like swelling, redness, and bruising. *See* Utah Guidelines § 4.4g.

allegedly contrary evidence. After determining that none of the other evidence on the record contradicted the panel's findings, she admitted the medical panel's findings and assigned impairment rating.

¶14 The judge also rejected Mr. Ramos's argument that she should increase the panel's assigned impairment rating based on his continuing subjective pain. In doing so, she stated she would not "give [Mr. Ramos's] subjective complaint more weight than . . . the objective evidence."

¶15 Finally, the administrative law judge rejected Mr. Ramos's arguments that the Utah Guidelines are unconstitutional. In rejecting his claims, she noted that the Utah Guidelines provide a uniform assessment, increase accuracy in diagnoses, and ensure a timely award.[14] In addition, the judge determined that because Mr. Ramos received a particularized assessment of his injury and impairment, his award was not arbitrary.

¶16 After rejecting all of Mr. Ramos's objections, the administrative law judge adopted the panel's 1-percent-whole-body impairment rating and awarded Mr. Ramos $1,045.20 in permanent partial disability compensation. Mr. Ramos appealed this decision to the Commission's Appeals Board, who affirmed the administrative law judge's order, and rejected

---

[14] Although the administrative law judge reached Mr. Ramos's arguments, she noted that the Utah Guidelines are not law and, as a result, not subject to a constitutional challenge. But this is incorrect. "An agency's written statement that is made as a rule in accordance with the requirements of [the Utah Administrative Rulemaking Act] is enforceable and has the effect of law." UTAH CODE § 63G-3-202(2). Because an agency's rule has the force and effect of law, it is subject to a constitutional challenge. *Id.* § 63G-4-403(4)(a).

We also note that an important issue underlying the arguments presented in this case is whether the Commission has the statutory authority to promulgate the regulations at issue. But because Mr. Ramos does not challenge the Commission's legal authority to enact its rule adopting the Utah Guidelines, we need not reach this issue. Instead, we assume in this opinion that the rule adopting the Utah Guidelines is a valid exercise of the Commission's authority and note that any valid rule carries the force and effect of any law passed by the legislature. *See id.* § 63G-3-202(2).

Mr. Ramos's constitutional arguments. Mr. Ramos appealed to the court of appeals, which then certified the matter to this court under Utah Code section 78A-4-103(3) and rule 43 of the Utah Rules of Appellate Procedure. We have jurisdiction pursuant to Utah Code section 78A-3-102(3)(b).

**Standard of Review**

¶17 We have "jurisdiction to review all final agency action resulting from formal adjudicative proceedings."[15] We may "grant relief" to individuals "seeking judicial review" if they are "substantially prejudiced" because an "agency action, or the statute or rule on which the agency action is based, is unconstitutional on its face or as applied"[16] or because "the agency has erroneously interpreted or applied the law."[17] "A person is 'substantially prejudiced' when the agency's erroneous interpretation or application is not harmless. We review that agency's interpretation or application of the law for correctness."[18]

**Analysis**

¶18 Mr. Ramos challenges his permanent partial disability compensation award. He argues that the Commission's process for determining benefits is unconstitutional, and that the administrative law judge should have increased his compensation award based on his continued, subjective pain.[19]

¶19 Mr. Ramos argues that the Commission's process for determining permanent partial disability benefits is unconstitutional. First, he argues that the adjudicative authority of administrative law judges has been unconstitutionally delegated to medical panels. But because administrative law judges retain the

---

[15] UTAH CODE § 63G-4-403(1).

[16] *Id.* § 63G-4-403(4)(a).

[17] *Id.* § 63G-4-403(4)(d).

[18] *Petersen v. Utah Labor Comm'n*, 2017 UT 87, ¶ 8, 416 P.3d 583 (citation omitted).

[19] In his opening brief, Mr. Ramos raised an additional issue on appeal. He argued that the medical panel improperly applied the Utah Guidelines in determining his impairment rating. But in his reply brief, he states that he "acknowledges that Respondents' argument [on this point] has significant merit" and he "withdraws it."

power to determine permanent partial disability benefits under the WCA, we conclude that their authority to adjudicate workers' compensation claims has not been unconstitutionally delegated to medical panels.

¶20  Second, Mr. Ramos raises a number of other constitutional arguments, asserting that the methods established in the Utah Guidelines for determining impairment ratings are arbitrary and fail to achieve the legislative purpose of the WCA. But these arguments are inadequately briefed, so we decline to address them on their merits.

¶21  In addition to Mr. Ramos's constitutional arguments, he argues that the administrative law judge failed to properly consider subjective pain in determining his impairment rating. But administrative law judges cannot augment impairment ratings in the way he suggests, because the Utah Guidelines do not allow for consideration of a claimant's subjective pain.

¶22  Finally, we note that Cobblestone argues that Mr. Ramos's claims are moot, and we therefore need not address them. According to Cobblestone, Mr. Ramos's claims are moot because he does not challenge the medical panel's assigned impairment rating on appeal. But Mr. Ramos's claims are not moot because, were he to prevail on any of his claims, he could be entitled to a new hearing and a new determination of benefits before an administrative law judge, so the parties' rights could be affected by this appeal. In other words, if the adjudicative authority of the administrative law judge was unconstitutionally delegated to a medical panel (as Mr. Ramos argues it was), the judge erred in admitting the medical panel's report into evidence and relying on its findings in her final determination. And if the methods for determining impairment ratings under the Utah Guidelines are unconstitutional, the administrative law judge erred in relying on them to calculate Mr. Ramos's compensation award. Additionally, if the Utah Guidelines permit the administrative law judge to augment Mr. Ramos's impairment rating based on his subjective pain, the administrative law judge erred in determining that she did not have the authority to grant his request. Any of these errors could result in a remand for a new determination. Because mootness is a threshold determination, we address this argument before addressing Mr. Ramos's claims.

## I. Mr. Ramos's Appeal is Not Moot

¶23  Before we address the merits of Mr. Ramos's claims, we must first address Cobblestone's assertion that this case is moot.

Cobblestone argues the case is moot because Mr. Ramos does not challenge the medical panel's assigned impairment rating on appeal. But because Mr. Ramos could have been entitled to a new hearing and a new determination of benefits before the Commission were we to rule in his favor on any of his claims, the parties' rights could be affected by this appeal. As a result, his appeal is not moot.

¶24 "An issue on appeal is considered moot when the requested judicial relief cannot affect the rights of the litigants."[20] If, during an appeal, the circumstances or facts of a case "change or develop," such that "an actual controversy" no longer exists, then the case is moot. [21]

¶25 In this case, Cobblestone argues an "actual controversy" no longer exists because Mr. Ramos does not challenge the medical panel's 1-percent-whole-body impairment rating based on its application of the Utah Guidelines to the facts of his case. But although Mr. Ramos has not challenged the medical panel's report and 1 percent impairment rating on appeal, he requests that this court vacate the Commission's final order upholding the administrative law judge's decision and instruct her to augment the medical panel's 1 percent impairment rating to 4 percent based on her findings that he continues to experience subjective pain and that pain limits his daily activities. And he asserts that he is entitled to this relief because (1) the Commission, through administrative law judges, has unconstitutionally delegated to medical panels its authority to determine WCA compensation; and (2) the methods for determining impairment ratings under the Utah Guidelines are unconstitutional. These arguments are not moot.

¶26 Were we to rule that the adjudicative authority of administrative law judges has been unconstitutionally delegated to medical panels, then the judge erred in admitting the medical panel's report into evidence and improperly adopted its assigned impairment rating in her final order. Additionally, were we to rule that the methods for determining impairment ratings under the Utah Guidelines violate any of the federal or Utah constitutional provisions that Mr. Ramos cites, then the judge similarly erred in

---

[20] *State v. Sims*, 881 P.2d 840, 841 (Utah 1994) (citation omitted) (internal quotation marks omitted).

[21] *Salt Lake County v. Holliday Water Co.*, 2010 UT 45, ¶¶ 18–21, 234 P.3d 1105.

admitting and relying on the medical panel's report because the findings are based on the methods outlined under those Guidelines. Finally, if the administrative law judge was permitted, under the Guidelines, to augment Mr. Ramos's impairment rating based on his subjective pain, she erred in determining that she did not have the authority to do so. Because Mr. Ramos could be entitled to a new hearing and a new determination of benefits before the Commission were we to rule in his favor on any of his claims, the parties' rights could be affected by this appeal. As a result, his appeal is not moot.

## II. The Labor Commission's Process for Determining Permanent Partial Disability Benefits is Constitutional

¶27 Mr. Ramos argues the Commission's process for determining permanent partial disability benefits is unconstitutional. First, he argues that the Commission's administrative law judges' authority to adjudicate permanent partial disability claims is unconstitutionally delegated to medical panels. According to Mr. Ramos, this authority is delegated by generally allowing medical panels to make credibility determinations, and in his case, when the medical panel made a determination about his "subjective experience" of pain. Additionally, he argues the medical panel should not have been permitted to categorize the severity of his injury—that only the administrative law judge has the authority to do so. Because he believes the medical panel exceeded its proper role in this case (by allegedly acting as the "ultimate finder of fact"), Mr. Ramos contends the panel's report should not have been admitted into evidence. We hold that under the Commission's process for determining disability, the adjudicative responsibility of administrative law judges has not been unconstitutionally delegated to medical panels. Medical panels merely assist administrative law judges in exercising their authority to adjudicate WCA claims. Additionally, in permitting the use of medical panels in the adjudication process, the legislature has provided a procedure for parties to challenge the admission of a medical panel's report into evidence.

¶28 Mr. Ramos makes a number of other constitutional arguments, asserting that the methods for determining impairment ratings under the Utah Guidelines are arbitrary, "grossly fail[] to advance the WCA's goals," and "den[y] injured workers equal protection under the law, and adequate procedural and substantive due process." He also asserts they violate the Labor and Open

Courts Clause of the Utah Constitution. He argues this is the case because workers are left without an adequate remedy due to the gross under-compensation resulting from the methods established in the Guidelines. But because Mr. Ramos has inadequately briefed these claims, we do not reach their merits.

### A. Medical Panels Do Not Perform an Administrative Law Judge's Quasi-Judicial Function Because They Merely Assist the Judge in Determining Permanent Partial Disability Benefits

¶29 Mr. Ramos argues that medical panels unconstitutionally serve as the final arbiter of permanent partial disability claims. He acknowledges, however, that the Commission's administrative law judges *may*, but are not required to, adopt a medical panel's report assigning an impairment rating. Still, he argues that the adjudicative authority of administrative law judges has been unconstitutionally delegated because, in practice, the medical panel's assessment is never rejected.[22] But even if Mr. Ramos is correct, this does not constitute an unconstitutional delegation of the administrative law judges' quasi-judicial function to a medical panel.

¶30 As already discussed, the Utah Legislature has delegated adjudicative authority to the Commission, allowing it to determine compensation awards pursuant to the WCA.[23] The Commission's

---

[22] Mr. Ramos provides no evidence on this point. In fact, as the Utah Court of Appeals has indicated, if, after a party's objection, an administrative law judge fails to make a determination that the medical panel's report is supported by "substantial evidence," it would be an abuse of discretion. *See, e.g.*, *Foye v. Labor Comm'n*, 2018 UT App 124, ¶¶ 24–26, 428 P.3d 26 (holding that there must be a "reasonable basis" in the record for an administrative law judge's decision to admit a medical panel's report after an objection).

[23] *See* UTAH CODE § 34A-1-301 ("The commission has the duty and the full power, jurisdiction, and authority to determine the facts and apply the law in [the WCA]."). We note that Mr. Ramos does not challenge the legislature's delegation of adjudicative authority to the Commission, only the alleged further delegation from the Commission to medical panels. In *Vega v. Jordan Valley Medical Center, LP*, we were asked to determine whether the legislature's delegation of adjudicative authority to an administrative agency was unconstitutional. 2019 UT 35, ¶ 15, 449

(Continued)

Division of Adjudication is assigned to adjudicate WCA claims,[24] and employs administrative law judges to serve as the arbiter of such claims.[25] When the Commission, through its administrative law judges, acts in this quasi-judicial role, it cannot delegate its adjudicative authority without running afoul of article VIII of the Utah Constitution.[26] But this court has determined that the adjudicative function does not "include functions that are generally designed to assist courts, such as conducting fact finding hearings . . . and making recommendations to judges."[27] So a non-judicial body, including medical panels, may assist in an ultimate fact-finding role without running afoul of article VIII.

¶31   In this case, Mr. Ramos claims that medical panels serve as the "ultimate fact-finder," rather than merely assisting the administrative law judge. As a result, he argues that a judge's authority has been unconstitutionally delegated in violation of

---

P.3d 31. In that case, we determined that the legislature's delegation of authority to a prelitigation panel, which determined whether a medical malpractice claim had merit and could be filed in district court, *id.* ¶ 4, was an unconstitutional delegation of the "core judicial power," *id.* ¶ 15, because the panel's decision was final and unappealable. *Id.* ¶ 13.

Mr. Ramos has not challenged the legislature's delegation of adjudicative authority to the Commission to determine WCA benefits. As a result, we do not address the delegation of authority in the first instance, only the Commission's further delegation to medical panels.

[24]   UTAH CODE § 34A-1-302(1)(a) (providing that the Commission's "presiding officer" shall "conduct hearings and adjudicative proceedings" when a claim "is filed with the Division of Adjudication").

[25]   *See, e.g.*, UTAH CODE § 34A-2-801(2)(a) (referring to an administrative law judge's ability to hear cases filed with the Commission's Division of Adjudication).

[26]   *Vega*, 2019 UT 35, ¶ 15. Article VIII, section I of the Utah Constitution provides that "[t]he judicial power of the state shall be vested in a Supreme Court, in a trial court of general jurisdiction known as the district court, and in such other courts as the Legislature by statute may establish."

[27]   *Vega*, 2019 UT 35, ¶ 15.

article VIII. But because medical panels do not serve as the ultimate fact-finder, the adjudicative authority of administrative law judges has not been unconstitutionally delegated. We so conclude because (1) medical panel recommendations are only one part of the overall process of adjudication of benefits; (2) the WCA's statutory structure allows parties to challenge a medical panel's recommendation; and (3) the administrative law judge retains the discretion to reject the medical panel's recommendation.

¶32 A medical panel's impairment rating is often only one of multiple factors in a disability compensation award determination.[28] This is because "[i]mpairment is not equivalent to disability."[29] Under the WCA, an impairment is "a purely medical condition reflecting an anatomical or functional abnormality or loss."[30] Under the Commission's methods as set forth in the Utah Guidelines, a medical panel "converts medical information about permanent losses into numerical values."[31] These numerical values are referred to as impairment ratings.[32] In contrast, a disability is "an administrative determination that may result in an entitlement to compensation as a consequence of [a worker] becoming medically impaired as to function."[33]

¶33 When an injured worker applies for disability benefits and is unable to perform the pre-injury job as a result of an impairment, the administrative law judge considers more than the injured worker's impairment and corresponding impairment rating in her final determination: she must also determine what alternative employment and earning capacity is possible.[34] So evidence of an

---

[28] We note, however, that in some cases, based on the circumstances presented, the medical panel's impairment rating will be the only factual finding an administrative law judge must make.

[29] Utah Guidelines § 1.1b (emphasis omitted).

[30] UTAH CODE § 34A-2-102(i).

[31] Utah Guidelines § 1.0a.

[32] *Id.*

[33] UTAH CODE § 34A-2-102(f).

[34] But if an injured worker is able to perform the pre-injury job, or has found an alternate career with the same earning capacity, then an administrative law judge considers only the permanent
(Continued)

impairment, including the corresponding impairment rating, may only be one factor in the administrative law judge's determination of disability benefits.

¶34 The Utah Guidelines provide the following example to illustrate this point:

> "A piano player losing a little finger would be rated at 5% . . . whole person impairment. He/she may also be rated as 100% disabled for the preinjury occupation, and 50% disabled from the loss of earning capacity (because there are other related careers). A physician could lose the same finger, be rated at 5% whole person impairment, and yet have little or no impact on his/her earning capacity."[35]

And so the medical panel's assessment and assignment of an impairment rating, which it provides to an administrative law judge in a report that may be admitted into evidence, is just one element of the total determination of a compensation award under the WCA.

¶35 In addition to assisting in determining an impairment rating, which is one part of an administrative law judge's determination of disability benefits, a medical panel provides "medical evidence"[36] of an impairment by submitting a report. But like the medical panel's determination of an impairment rating, this assistance does not unconstitutionally usurp the administrative law judge's authority because this evidence is not conclusive in any determination of disability benefits.[37] Not only may parties submit their own evidence of an impairment and corresponding impairment rating, but they may also challenge a medical panel's report through written objection.[38] After an objection, the

---

impairment in determining an award. *See* Utah Guidelines § 1.1b (defining an "impairment rating" as "[m]easuring the permanent residual losses secondary to the injury" and "disability rating" as "establishing the worker's capability").

[35] Utah Guidelines § 1.1b.

[36] UTAH CODE § 34A-2-412(6)(a).

[37] *Id.* § 34A-2-601(2)(e)(i).

[38] *Id.* § 34A-2-601(2)(d)(ii).

administrative law judge may hold a hearing.[39] And, if a party makes the proper "good cause" showing in their written objection, the judge "may order" that the chair or a member of the panel "be present at the hearing for examination and cross-examination."[40] So parties have the opportunity to provide their own evidence, challenge the report and point to the "substantial conflicting evidence" on the record, and then examine members of the panel at a hearing.[41]

¶36 Because parties have the opportunity to challenge the medical panel's report and offer their own evidence, an administrative law judge must make a final determination about the admissibility of the panel's report as evidence. Administrative law judges cannot admit the challenged medical panel's report into evidence unless they determine that the panel's findings can be supported by other evidence in the record.[42] Thus, in general, the medical panel's involvement does not unconstitutionally usurp the authority of the administrative law judge. Nor did it do so in this case.

¶37 In this case, the amount of Mr. Ramos's disability award turned on the extent of his impairment following his workplace injury. In order to show that he experienced a permanent impairment, he provided evidence from his treating physical therapist. His physical therapist determined that Mr. Ramos "had a 6 [percent] whole person impairment rating." In contrast, Cobblestone's physician conducted a medical examination and determined that "there was no objective evidence to support that [Mr. Ramos] had any impairment."

---

[39] *Id.* § 34A-2-601(2)(f).

[40] *Id.*

[41] *Id.* § 34A-2-601(2)(e)(ii). Additionally, a party may appeal an administrative law judge's decision to assign a medical panel and her decision to admit its report. In other words, the administrative law judge is not the final arbiter of WCA claims. First, a claimant may appeal to the Commission's Appeals Board, which then enters a final decision in the administrative proceedings. *See* UTAH CODE §§ 34A-2-801(4), 63G-4-301. Second, the claimant may appeal the agency's final decision to the courts, pursuant to Utah Code section 63G-4-403.

[42] *Id.* § 34A-2-601(2)(g)(ii).

¶38 Because the parties' provided conflicting medical evidence, the administrative law judge appointed a medical panel.[43] That panel diagnosed Mr. Ramos with lower extremity painful organic syndrome, and it concluded that Mr. Ramos's injury—based on his limitations, the degree of swelling, the type of impact, and the level of his fall—constituted a 1-percent-whole-person impairment rating under the Utah Guidelines.

¶39 Mr. Ramos objected to the panel's findings and its assigned impairment rating by filing a written objection. He argued the panel "rel[ied] on findings of fact not set forth in the Court's interim order" and failed to consider Mr. Ramos's "diminished . . . ability to exercise, work, and travel" in determining his impairment rating. He submitted a declaration outlining his limitations resulting from his workplace injury. After a hearing on the matter, the administrative law judge asked the medical panel to review Mr. Ramos's declaration and submit a supplemental report.

¶40 After reviewing Mr. Ramos's declaration, the medical panel did not increase the assigned impairment rating. This was because Mr. Ramos's "knee [was] fully functional," with "full extension on exam as well as intact ligaments." The panel acknowledged that Mr. Ramos continued to experience pain and that the pain interfered with "some" of his activities, including his employment. But it was "unable to explain" Mr. Ramos's continued pain and concluded that Mr. Ramos's declaration, outlining his subjective pain but offering no objective medical evidence, did not change the impairment rating under the Utah Guidelines. The panel provided the administrative law judge with a supplemental report, outlining these findings.

¶41 Mr. Ramos objected to the panel's supplemental report. He made four assertions that he argues should have increased his impairment rating. First, he claimed the trestle "rotated in an arc" before falling on his knee, which was contrary to the medical panel's conclusion that his injury was the result of a unidirectional force. But the administrative law judge concluded that Mr. Ramos's assertion about the trestle's movement was not relevant to the categorization of the mechanism for injury. And she noted there was "no evidence" that Mr. Ramos's "knee twisted or hyperextended" after the impact or that the impact caused him to

---

[43] UTAH ADMIN. CODE r. 602-2-2(A) (2019).

"fall from height" such that it would increase the assigned categorization of his "mechanism for injury" under the Utah Guidelines. Because there was no conflicting evidence on this point, the administrative law judge concurred with the medical panel's characterization of the mechanism of Mr. Ramos's injury.

¶42 Mr. Ramos's second and third objections relate to the panel's alleged failure to define terms that it used in categorizing his injury. He asserts that the panel did not define "mild" or "moderate" swelling, which relates to his initial presenting signs of injury, or distinguish between "minimal," "moderate," or "significant" radiological findings. As a result, Mr. Ramos contends that the administrative law judge could not independently categorize Mr. Ramos's initial presentation of his injury or radiological findings. As to this point, the administrative law judge noted that Mr. Ramos's x-ray, taken the day he was injured, noted "mild swelling," a mild initial presenting injury, and an "external joint" injury, a minimal to moderate radiological finding under the Utah Guidelines. And the judge noted that Mr. Ramos did not provide contrary evidence to support finding something more than a categorization of "mild" swelling or "mild" to "moderate" radiological findings. Because there was no conflicting evidence on this point, the administrative law judge concurred with the medical panel's characterization of these two factors.

¶43 Finally, Mr. Ramos objected because the medical panel focused on his limitations at work, rather than the limitations he experiences in his daily activities, when it categorized his pain as interfering with "some" but not "most" of his daily activities. The judge reviewed the evidence provided and agreed with Mr. Ramos that he cannot "walk, run, or sit as comfortably" as he did before the injury. But the judge noted that Mr. Ramos's pain does not impact his ability to sleep or work full-time. And so as a result, the administrative law judge agreed that this constituted "some" but not "most" of Mr. Ramos's daily activities and adopted the panel's categorization of Mr. Ramos's limitations on this point.

¶44 As this review of the administrative law judge's findings shows, the judge thoroughly reviewed each of Mr. Ramos's objections. The judge made an independent ruling on each objection after reviewing the evidence and finding that all evidence supported the medical panel's report. And the judge ultimately rejected Mr. Ramos's objections, agreeing with the medical panel's rationale and corresponding impairment rating, which were made

in accordance with the Utah Guidelines. For this reason, the judge admitted the report into evidence and awarded benefits that were consistent with its findings. So contrary to Mr. Ramos's assertion, it was the judge, and not the medical panel, who exercised adjudicative authority throughout the proceedings.

¶45 In sum, an impairment rating is only one element of a disability benefit award, the statutory structure allows a party to challenge a medical panel's report, and an administrative law judge must make a final determination about the admissibility and reliability of the report. Accordingly, we conclude that under the Commission's process for determining impairment ratings, the adjudicative authority of administrative law judges is not unconstitutionally delegated to medical panels.

*B. Mr. Ramos's Other Constitutional Claims Asserting That The Methods For Determining Impairment Ratings Under The Utah Guidelines Violate Several Provisions of The Federal and Utah Constitutions Are Inadequately Briefed*

¶46 Mr. Ramos makes several other constitutional arguments challenging the methods for determining an impairment rating under the Utah Guidelines. According to Mr. Ramos, the methods provided by the Utah Guidelines are arbitrary, "grossly fail[] to advance the WCA's goals," and "den[y] injured workers equal protection under the law, and adequate procedural and substantive due process." He also asserts that they violate the Labor and Open Courts Clauses of the Utah Constitution because workers are without an adequate remedy due to the gross under-compensation provided by the methods established in the Utah Guidelines. But because Mr. Ramos has inadequately briefed these constitutional claims, we do not reach their merits.

¶47 Under rule 24 of the Utah Rules of Appellate Procedure, a party's arguments must "explain, with reasoned analysis supported by citations to legal authority and the record, why [he or she] should prevail"[44] "with respect to the issues."[45] In other words, we require that parties adequately brief issues they raise on appeal. This allows us to properly evaluate a case on its merits. Our rule 24 standard for adequate briefing is "subjective" and we have

---

[44] UTAH R. APP. P. 24(a)(8).

[45] *State v. Roberts*, 2015 UT 24, ¶ 18, 345 P.3d 1226 (citation omitted).

discretion to "disregard or strike briefs that do not comply with rule 24's substantive requirements."[46] So while it is within our discretion to reach the merits of an argument that is inadequately briefed, a party that fails to meet rule 24's "requirements will likely fail to persuade the court of the validity of their position."[47]

¶48 When a party argues that a statute or rule violates provisions of the federal and Utah Constitutions, the "[m]ere mention of a constitutional right, phrase, or principle does not raise a constitutional claim."[48] In addition to "identify[ing] the provision allegedly infringed," a party must "develop an argument as to how that provision has been violated" to meet rule 24's standards.[49] As we have previously explained, "[a] party may not simply point toward a pile of sand and expect the court to build a castle. . . . [T]he development of an argument is a party's responsibility, not a judicial duty."[50]

¶49 With these principles in mind, we hold that Mr. Ramos's other constitutional arguments challenging the methods established in the Utah Guidelines are inadequately briefed. Although he identifies several federal and state constitutional provisions, he fails to point us to authority interpreting them. In addition, he fails to develop a coherent argument, based on the facts of his case, as to how these constitutional provisions were violated. For example, in his opening brief, Mr. Ramos does not cite any authority interpreting the Due Process Clauses of the United States or Utah Constitutions, Equal Protection Clause of the United States Constitution, or the Uniform Operation of Laws Clause of the Utah Constitution. And while he points us to one case interpreting the Open Courts Clause, he does not track the proper

---

[46] *Id.*

[47] *Id.*; *see also Bank of Am. v. Adamson*, 2017 UT 2, ¶¶ 11–13, 391 P.3d 196 (stating that "our analysis" of whether an appellant adequately briefed an issue is "focused on the ultimate question of whether the appellant has established a [sufficient argument for ruling in its favor]—and not on whether there is a technical deficiency in [briefing] meriting a default." (alteration in original) (citation omitted)).

[48] *Salt Lake City v. Kidd*, 2019 UT 4, ¶ 35, 435 P.3d 248.

[49] *Amundsen v. Univ. of Utah*, 2019 UT 49, ¶ 47, 448 P.3d 1224.

[50] *Id.* (citation omitted).

analysis for such a claim and fails to develop an argument as to how this provision was violated. His bare assertions—that the methods established by the Utah Guidelines are "arbitrary" and "discriminatory" and, as a result, unconstitutional—are not developed within the context of relevant case law interpreting the constitutional provisions he claims were violated.[51] His failure to provide relevant case law and to develop an argument based on that law leaves us with the task of developing the contours of these important constitutional arguments. We decline to do so.[52]

¶50 We also note that, to the extent we can discern Mr. Ramos's arguments, they appear to lack merit. For example, he makes broad assertions that the methods established in the Utah Guidelines are arbitrary and fail to relate to the purpose of the WCA, which is to compensate workers for a loss of his or her employability due to a

---

[51] *Id.* ("Appending the term 'unconstitutional' to an argument adds nothing to it.").

[52] We note that in his reply brief, Mr. Ramos attempts to comply with our briefing requirements by providing some additional citations to authority. But these additional citations do not cure his briefing defects because he still does not develop a "reasoned analysis" that is "supported by citations" to the appropriate "legal authority." UTAH R. APP. P. 24(a)(8); *cf. U.P.C., Inc. v. R.O.A. Gen., Inc.*, 1999 UT App 303, ¶ 57 n.7, 990 P.2d 945 (addressing an appellant's arguments because the reply brief "adequately address[ed] the issue" "initial[ly]" raised in the opening brief, and so did not catch appellees by "total surprise").

We also note that Mr. Ramos raises some issues for the first time in his reply brief, a practice we have consistently rejected because it leaves the appellee without an opportunity to respond. *See, e.g., State v. Weaver*, 2005 UT 49, ¶ 19, 122 P.3d 566. For example, Mr. Ramos asserts for the first time in his reply brief that he is in a "protected class" as a laborer, and under the federal Equal Protection Clause, he is entitled to a higher standard of review. He also asserts, for the first time in his reply brief, that his right to "have an adequate redress for his damages" as a result of his workplace injury is a fundamental right under the federal Due Process Clause. In his opening brief, Mr. Ramos did not identify any standard of review for his constitutional claims. And so his assertion that he is entitled to a heightened standard of review fails to give the appellees an opportunity to respond. *See Allen v. Friel*, 2008 UT 56, ¶ 8, 194 P.3d 903.

workplace injury. But the Utah Guidelines provide a uniform method of diagnosis based on medical evidence, which is then converted to a numerical value, allowing administrative law judges to provide an award that is proportionate to the schedule listed in Utah Code section 34A-2-412(4). Mr. Ramos has not provided evidence or an adequate explanation for how these methods for diagnosing impairments and assigning impairment ratings are arbitrary.[53]

¶51 Mr. Ramos also raises a challenge under the Open Courts Clause.[54] He seems to suggest that under the Utah Guidelines' allegedly arbitrary methods for assigning impairment ratings, injured workers receive inadequate compensation. And this inadequate compensation violates the Open Courts Clause.[55] But

---

[53] We note that Mr. Ramos is not without remedy to address his policy concerns regarding the methods established in the Utah Guidelines. Under the Utah Administrative Rulemaking Act, he may petition the Commission to enact, amend, or repeal a rule, UTAH CODE § 63G-3-601(2), including the rule adopting the Utah Guidelines. *See* UTAH ADMIN. CODE r. 612-300-9 (2019). The Commission must respond to such a petition within sixty days and state its reasons for either denying the request or initiating rulemaking proceedings. UTAH CODE § 63G-3-601(5). If the agency "has not provided the petitioner written notice that [it] has denied the petition or initiated rulemaking proceedings within the time limitations" provided in the statute, the petitioner "may seek a writ of mandamus in state district court." *Id.* § 63G-3-601(7).

[54] "All courts shall be open, and every person, for an injury done to him in his person, property or reputation, shall have remedy by due course of law . . . ." UTAH CONST. art. I, § 11.

[55] The Open Courts Clause "provides a substantive check against legislative power by impos[ing] some limitation on the legislature's great latitude in defining, changing, and modernizing the law." *Petersen v. Utah Labor Comm'n*, 2017 UT 87, ¶ 20, 416 P.3d 583 (alteration in original) (citation omitted) (internal quotation marks omitted). When a party challenges legislative action — like the WCA — and alleges that it abrogated a previously existing right, we proceed with a two-step analysis.

Under this two-step analysis, a party must first "show that [a] previously existing right or remedy has been abrogated" by the legislature. *Id.* ¶ 23. If we determine that the legislature abrogated

(Continued)

we have previously determined that, as a whole, the benefits provided by the WCA are an adequate substitute remedy for the legislature's abrogation of an injured worker's remedy in tort against his or her employer under the Open Courts Clause.[56] Mr. Ramos has not asked us to overrule our prior precedent. And he fails to provide any reason to distinguish the facts of his case from our prior decision.

¶52  In sum, we do not reach the merits of Mr. Ramos's other constitutional arguments challenging the methods established in the Utah Guidelines for determining impairment ratings because they are inadequately briefed. But we do note that Mr. Ramos may address his policy concerns regarding the Utah Guidelines with the Commission, using the methods provided under the Utah Administrative Rulemaking Act.

------

an existing right or remedy, we must then consider whether the legislature provided a substitute for the existing right or remedy, or had a valid purpose in abrogating it without establishing a substitute right or remedy. *Id.* ¶ 29. If the legislature substituted the abrogated right or remedy with a new set of rights or remedies, we must determine whether this substitution is "an effective and reasonable alternative." *Id.* ¶ 28. And if the legislature did not provide a substitute set of rights or remedies, we must determine whether the legislature's policy decision was "justified" because it "eliminated" "a clear social or economic evil." *Berry ex rel. Berry v. Beech Aircraft Corp.*, 717 P.2d 670, 680 (Utah 1985). We must also ensure that, in eliminating such an evil, the legislature did not act in an "arbitrary or unreasonable" manner. *Id.*

[56] In *Petersen v. Utah Labor Commission*, an injured worker challenged the Commission's determination that a statute of repose barred his claim, filed more than eight years after he was injured at work, for temporary total disability. 2017 UT 87, ¶ 1. We determined that an injured worker's common law remedy in tort was abrogated by the legislature when it created the WCA. *Id.* ¶ 28. But we concluded that the legislature's policy decision to replace injured workers' common law remedy in tort against their employers with the WCA's package of benefits was an adequate substitute remedy under the Open Courts Clause. *Id.* ¶ 35. This was because, as a whole, the WCA provided a comprehensive "no-fault, time-limited package of . . . benefits." *Id.*

### III. Mr. Ramos is Not Entitled to an Augmented Impairment Rating Based on His Subjective Pain

¶53 Mr. Ramos's argues that the administrative law judge erred when she failed to augment his assigned impairment rating based on his subjective pain. He asserts that because the administrative law judge found that Mr. Ramos continued to experience pain that affected both work and non-employment activities, she was permitted to increase his impairment rating by 3 percent. But the Utah Guidelines expressly contradict Mr. Ramos's argument. Under the Utah Guidelines, Mr. Ramos is not entitled to a 3-percent augmentation of his impairment rating based on his subjective pain.

¶54 There are various approaches as to whether an impairment rating may be increased based on the claimant's subjective pain.[57] For example, under the AMA Guidelines, a "rater" may increase a claimant's impairment rating by up to 3 percent based on the claimant's subjective pain that "increase[s] the burden of [the claimant's] condition . . . ."[58] As Mr. Ramos notes, this is because subjective pain may be "severe and disabling" but "resistant to objective proof." So under the approach outlined in the AMA Guidelines, a "rater" has the discretion to increase an impairment rating based on a claimant's subjective pain.

¶55 But the Commission has explicitly rejected the AMA Guidelines on this point. After having "review[ed] the various philosophies" for increasing an impairment rating due to "subjective pain," the Commission adopted a rule prohibiting raters from increasing an impairment rating due to a claimant's subjective pain.[59] It did so because it determined that allowing for increases based on subjective pain would decrease consistency among raters and increase "secondary litigation[] and cost."[60] Accordingly, no claimants in Utah, including Mr. Ramos, are

---

[57] *See* Utah Guidelines § 2.0a.

[58] *See id.* (quoting AM. MED. ASS'N, THE GUIDES TO THE EVALUATION OF PERMANENT IMPAIRMENT 573 (5th ed. 2001).

[59] *Id.* Specifically, the Commission determined that "no additional award will be calculated for pain . . . for conditions rated by" the Utah and AMA Guidelines. *Id.*

[60] *Id.*

entitled to an increased impairment rating due to their subjective pain.[61]

¶56 In sum, the administrative law judge could not have augmented the medical panel's impairment rating based on Mr. Ramos's subjective pain. As a result, he is not entitled to the relief he requests.

## Conclusion

¶57 We reject Cobblestone's argument that Mr. Ramos's appeal is moot. Because Mr. Ramos could have been entitled to a new hearing and a new determination of benefits before the Commission were we to have ruled in his favor on any of his claims, the parties' rights could have been affected by this appeal. As a result, his appeal is not moot.

¶58 Although Mr. Ramos's claims are not moot, we do, in fact, reject each of them. We reject Mr. Ramos's arguments that the Commission's process for determining permanent partial disability benefits is unconstitutional. First, the adjudicative authority of administrative law judges has not been unconstitutionally delegated to medical panels because medical panels merely assist administrative law judges in their ultimate fact-finding and judges are not bound by a medical panel's report. Second, Mr. Ramos's other constitutional arguments, asserting that the methods established in the Utah Guidelines violate various provisions of the federal and Utah constitutions, are inadequately briefed. Accordingly, we decline to address them.

¶59 We also reject Mr. Ramos's claim that the administrative law judge erred in failing to increase his compensation award based on subjective pain. The Commission expressly precludes administrative law judges from augmenting an impairment rating based on a claimant's subjective pain.

¶60 For these reasons, we affirm the decision of the Labor Commission.

---

[61] *Id.* The Commission provides three exceptions to this rule, none of which applies in Mr. Ramos's case. *See id.* (permitting an increase in an impairment rating due to subjective pain as the result of phantom pain from an amputation, "headaches secondary to severe head trauma or skull fractures," and "post paraplegic pain").