*This opinion is subject to revision before final publication in the Pacific Reporter*

**2019 UT 4**

IN THE

## SUPREME COURT OF THE STATE OF UTAH

SALT LAKE CITY,
*Appellee,*

*v.*

KARLIE KIDD,
*Appellant.*

No. 20150280
Filed January 23, 2019

On Certification from the Court of Appeals

Third District, Salt Lake
The Honorable Judge Mark Kouris
No. 131401513

Attorneys:

Heather Lindsay, Salt Lake City, for appellee

W. Andrew McCullough, Midvale, for appellant

JUSTICE PEARCE authored the opinion of the Court in which
CHIEF JUSTICE DURRANT, ASSOCIATE CHIEF JUSTICE LEE,
JUSTICE HIMONAS, and JUSTICE PETERSEN joined.

JUSTICE PEARCE, opinion of the Court:

### INTRODUCTION

¶1  Salt Lake City requires that any individual employed by an escort service agency, or any other sexually oriented business, obtain a license from the City before providing services. When Karlie Kidd met an undercover Salt Lake City police officer at the Grand America Hotel and asked him for a "show-up" fee, she did not possess such a license. She did, however, have an escort services license from Midvale City. Salt Lake City nevertheless cited Kidd for offering escort services without a valid license.

¶2  State law authorizes Salt Lake City and Midvale, as well as any other municipality, to impose licensing requirements on employees of sexually oriented businesses. This results in a regulatory scheme where escorts must obtain licenses in each jurisdiction in which they want to operate, if the jurisdiction requires a license.

¶3  To Kidd, the statute promotes regulatory overkill and burdens her constitutional rights because the license Midvale issued to her satisfies Salt Lake City's requirements and any legitimate interest the City might have in regulating her profession. Kidd claims that the imposition of multiple licensing requirements violates her First Amendment and Equal Protection rights.

¶4  Because Kidd's First Amendment argument is inadequately briefed and because her Equal Protection claim was not properly raised in the district court, we affirm her conviction.

## BACKGROUND

¶5  Kidd and the escort service agency that employed her were licensed to provide sexually oriented business services in Midvale. Kidd was not, however, licensed by Salt Lake City to provide sexually oriented business services in that municipality. To obtain that license, Kidd would have been required to pay a fee and provide her social security number, fingerprints, and criminal history, as well as other personal information. *See* SALT LAKE CITY, UTAH, CODE § 5.61.110.[1]

¶6  An undercover Salt Lake City police officer answered Kidd's online advertisement and arranged to meet her at the Grand America Hotel. Upon arrival, Kidd requested a "show-up" fee or "donation." The officer provided the payment; additional officers then entered the room. They informed Kidd that they were police, ran a records check, and ascertained that Kidd did not have a Salt Lake City-issued sexually oriented business license. They cited Kidd for violating Salt Lake City Code section 5.61.100.

¶7  Section 5.61.100 provides that "[i]t is unlawful for any sexually oriented business to employ, or for any individual to be employed by a sexually oriented business in the capacity of a

---

[1]  Kidd argues that much to her consternation, she already provided the same information to Midvale, along with a fee, to obtain its license. *See* MIDVALE CITY, UTAH, CODE § 5.12.310.

sexually oriented business employee, unless that employee first obtains a sexually oriented business employee license." The Salt Lake City Code, like the Utah Code, deems escorts to be employees of sexually oriented businesses.

¶8 The City defines "sexually oriented business" as "[n]ude entertainment businesses, sexually oriented outcall services, adult businesses, 'seminude dancing bars' and seminude dancing agencies." SALT LAKE CITY, UTAH, CODE § 5.61.040. While this definition does not expressly mention escorts, the City's definition of "sexually oriented business employees" does, specifying that "[a]ll persons making outcall meetings under this chapter, including escorts, . . . shall be considered sexually oriented business employees." *Id.* The Utah Code is also explicit that escort service agencies are "sexually oriented businesses." UTAH CODE § 10-8-41.5(1)(f)(i) (defining "[s]exually oriented business" as "a business at which any nude or partially denuded individual . . . performs any service for compensation"); *id.* § 10-8-41.5(1)(f)(ii) (noting that the term "'[s]exually oriented business' includes . . . an escort service").[2]

¶9 Section 10-8-41.5 of the Utah Code expressly prohibits escorts from providing sexually oriented business services in a city, if the city requires that the employee be individually licensed and the employee has not obtained such a license. UTAH CODE § 10-8-41.5(2) ("A person employed in a sexually oriented business may not work in a municipality: (a) if the municipality requires that a person employed in a sexually oriented business be licensed individually; and (b) if the person is not licensed by the municipality."). Section 10-8-41.5 therefore mandates that escorts obtain a license in each city in which they want to provide services, if that city requires a license.

---

[2] The Salt Lake City Code defines "escort" as follows: "Any person who, for pecuniary compensation, dates, socializes, visits, consorts with or accompanies . . . another or others," or offers to do so, "to or about social affairs, entertainment or places of amusement, or within any place of public or private resort or any business or commercial establishment or any private quarters." SALT LAKE CITY, UTAH, CODE § 5.61.040 (but excluding, for example, "persons who provide business or personal services such as licensed private nurses" or "services such as singing telegrams, birthday greetings or similar activities"); *see also* UTAH CODE § 10-8-41.5(1)(c)(i) (defining "escort" similarly).

¶10  Kidd challenged this regulatory framework before the justice court. Kidd asserted that section 10-8-41.5 unconstitutionally prohibited individuals from providing sexually oriented services if they did not satisfy the license requirement of each city in which they wanted to work. Kidd first raised these challenges in justice court, without success. In a trial de novo before the district court, Kidd reiterated her constitutional arguments. *See generally* Utah Code § 78A-7-118(1) (providing that, upon timely appeal following sentencing, criminal defendants are generally entitled to trial de novo in district court).

¶11  More precisely, Kidd moved to dismiss the charges against her, asserting that section 10-8-41.5 infringed her freedom of expression by authorizing a city to impose "repetitive licensing requirements" upon an escort already licensed in a "neighboring city." Kidd acknowledged she "did not have a Salt Lake City [e]scort license at the time of this incident," but asserted she "did have a license in the neighboring cit[y] of Midvale." She claimed her Midvale license was "sufficient to meet the requirements of" the Salt Lake City ordinance, and there was "no valid reason" for imposition of "duplicative and expensive licensing procedures."

¶12  In support of her argument, Kidd referenced several First Amendment cases, but she did not connect them to the facts of her case. Other than asserting that "[e]scorts are protected in their profession by the First Amendment," Kidd did not address what speech was allegedly infringed. And with even less specificity, Kidd asserted that section 10-8-41.5 violated her "rights to Equal Protection of the Law." She did not cite or apply equal protection authorities to the facts of her case.

¶13  The district court denied the motion and Kidd entered a conditional plea of no contest preserving her right to appeal the constitutional questions. And the court of appeals certified the case to this court.

## STANDARD OF REVIEW

¶14  "The grant or denial of a motion to dismiss is a question of law [that] we review for correctness, giving no deference to the decision of the trial court." *State v. Hamilton*, 2003 UT 22, ¶ 17, 70 P.3d 111 (citation omitted) (cleaned up).

## ANALYSIS

### I. Jurisdiction

¶15   Before we turn to the merits of the case, we need to address a jurisdictional question. Utah Code section 78A-7-118 provides that when justice court proceedings are followed by a trial de novo in district court, as was the case here, "[t]he decision of the district court is final and may not be appealed unless the district court rules on the constitutionality of a statute or ordinance." UTAH CODE § 78A-7-118(8).

¶16   The only written ruling in the record with respect to Kidd's motion to dismiss, and the constitutional arguments contained therein, is the district court's notation that Kidd's motion was "[d]enied." While this matter was pending in front of the court of appeals, but prior to transfer to our court, the court of appeals questioned whether the district court's denial constituted a "rul[ing] on the constitutionality of a statute or ordinance" as section 78A-7-118 requires.

¶17   Kidd then supplemented the record with a transcript. The court of appeals subsequently certified the case, but did not address the jurisdictional question it had raised.

¶18   In her briefing to this court, Kidd responds to the court of appeals' concern and argues that we have appellate jurisdiction because the district court ruled on the statute's constitutionality. The City does not appear to disagree. Although this might seem to resolve the question, "acquiescence of the parties is insufficient to confer jurisdiction." *First Nat'l Bank of Layton v. Palmer*, 2018 UT 43, ¶ 6, 427 P.3d 1169 (citation omitted). We must be "satisfied that we have jurisdiction before reaching the merits." *Id.*

¶19   With the transcript in the record, we are assured that we have jurisdiction because the district court "rule[d] on the constitutionality of a statute or ordinance" as required for purposes of section 78A-7-118.[3] We are therefore satisfied that appellate jurisdiction exists.

---

[3] We agree with Kidd that we have jurisdiction to hear this case. But we disagree with Kidd's reasoning. Kidd asserts that by certifying this case, the court of appeals "settled" the question of whether jurisdiction exists. Kidd misunderstands the import of certification.

(continued . . .)

## II. First Amendment

¶20 Kidd first asserts that Utah Code section 10-8-41.5 "violates [her] first amendment right to free speech, and particularly violates" her right to "commercial speech." We cannot reach the merits of this claim, however, because Kidd does not identify the speech at issue in this case, much less demonstrate that any such speech is protected by the First Amendment. Kidd's argument is inadequately briefed and, as a result, she has failed to carry her burden of persuasion on appeal.

¶21 As an initial matter, "it is the obligation of the person desiring to engage in assertedly expressive conduct to demonstrate that the First Amendment even applies." *Clark v. Cmty. for Creative Non-Violence*, 468 U.S. 288, 293 n.5 (1984). Here, Kidd needed to start by pointing this court to the speech she claims the statute burdens. Yet Kidd does nothing more than recite that, while employed as an escort, she arrived at a hotel room and demanded a "show-up" fee. Her argument assumes that the licensing requirement has infringed

---

Utah Code section 78A-4-103 empowers the court of appeals to assign cases within its original jurisdiction to this court. Utah Code § 78A-4-103(3). By rule, the court of appeals may certify cases that "will govern a number of other cases involving the same legal issue or issues," that present questions of "first impression under state or federal law which will have wide applicability," or that otherwise "should be decided by" this court and on which this court would "probably grant a petition for writ of certiorari." Utah R. App. P. 43(c). Certification is thus a procedural mechanism aimed toward efficient resolution of matters of significant jurisprudential importance. *See id.* It accomplishes only the transfer of a case from one appellate court to another; it does not constitute a ruling on any other issue.

Likewise, when a case otherwise appears to fit rule 43's criteria, our inability to reach the merits is not a conclusion that the case was improperly certified. Certification usually occurs early in the appellate process, and the existence or outcome of jurisdictional or procedural issues on which resolution ultimately turns may not have been sufficiently apparent in the briefing before the court of appeals. Thus, although we hope certified cases have been vetted for jurisdictional and preservation issues, certification should not be viewed as a court of appeals plebiscite on those questions.

her ability to engage in constitutionally protected speech, whatever that speech might have been. In other words, Kidd leaves it to this court to fill in the blanks about what speech or expressive conduct might have occurred but for her failure to obtain a license. We are not in a position to do that for Kidd. We could speculate on what Kidd would do but for the statute, but judicial speculation cannot overcome the presumption of constitutionality that we afford legislation. "[A]ll statutes are presumed to be constitutional and the party challenging a statute bears the burden of proving its invalidity." *State v. Angilau*, 2011 UT 3, ¶ 7, 245 P.3d 745 (citation omitted). This Kidd did not do.

¶22 As noted above, Kidd characterizes her claim as resting primarily—or perhaps entirely—on the infringement of her commercial speech. But again, Kidd does not identify the commercial speech at issue. She does make a passing assertion that First Amendment protection has been afforded to escort service agencies on what appears to be artistic (as opposed to commercial) speech grounds. We express no opinion as to whether, or to what degree, the First Amendment may protect escort services generally or escort service providers individually.[4] We simply note that to

---

[4] *Compare FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 224 (1990) (plurality opinion) (noting that the ordinance at issue "applie[d] to some businesses that apparently are not protected by the First Amendment, e.g., escort agencies" (emphasis omitted)); *Ctr. for Fair Pub. Policy v. Maricopa Cty.*, 336 F.3d 1153, 1165 (9th Cir. 2003) (noting that the statutory provision at issue "regulates both establishments protected by the First Amendment—adult bookstores, video stores, cabarets, motion picture theaters and theaters—and businesses that have no such protection—*escort agencies*" (emphasis added)); *id.* at 1172 n.1 (Canby, J., dissenting) (agreeing with the majority that "the statutory term 'sexually-oriented businesses' includes escort services that presumably are not engaged in First Amendment-protected activity"); *IDK, Inc. v. Clark Cty.*, 836 F.2d 1185, 1195–97 (9th Cir. 1988) (concluding that "escort services' activities are not protected by the [F]irst [A]mendment"); *with id.* at 1200 (Reinhardt, J., dissenting) (concluding that "[t]o the extent that association is constitutionally protected, the first amendment applies to IDK (as well as to the escorts and their patrons), despite the fact that IDK operates for commercial ends"). *See also Bushco v. Utah State Tax Comm'n*, 2009 UT 73, ¶¶ 2, 6, 48, 54, 58, 225 P.3d 153 (rejecting First Amendment

(continued . . .)

assert a First Amendment claim, Kidd needs to start by identifying and characterizing the speech at issue. And Kidd has failed to do so.[5]

¶23  Kidd would then have needed to demonstrate what level of protection the speech at issue receives and how the statute burdens it. Kidd compounds this problem by citing cases applying various First Amendment frameworks without explaining how those distinctive legal principles might apply, either alternatively or in combination. Kidd's main contention appears to be that section 10-8-41.5 fails as a regulation of commercial speech, and in support she relies on *Pacific Frontier v. Pleasant Grove City*, which addresses a First Amendment challenge involving commercial speech. 414 F.3d 1221, 1231–35 (10th Cir. 2005). But Kidd also relies on *United States v. O'Brien*, which addresses regulation of conduct that implicates protected expression. 391 U.S. 367, 376–77 (1968). She also cites *FW/PBS, Inc. v. City of Dallas*, which addresses whether a regulation constitutes an unconstitutional prior restraint due to inadequate procedural safeguards. 493 U.S. 215, 223 (1990) (plurality opinion). And while Kidd references other cases, she does little with them. For example, she cites, without meaningful analysis, *Tollis Inc. v. San Bernardino County*, which analyzes whether an ordinance may be upheld as a content-neutral time, place, and manner regulation and justified on the basis of secondary effects. 827 F.2d 1329, 1332–33 (9th Cir. 1987).

---

challenges raised by "[p]laintiffs, a group of escort service agencies and erotic dancing clubs," without explicitly addressing whether the escort service agencies were entitled to First Amendment protection, and ultimately concluding that the "provisions of the statute applying the tax [at issue] to escort services [were] unconstitutionally vague").

[5] The next step would have been for Kidd to clearly identify the alleged burden on her protected speech. Here again, Kidd's briefing fell short. Kidd alludes to the burden on escorts seeking to provide services across Salt Lake County, but does not aver that she sought to work in any municipality other than Salt Lake City and Midvale. Thus, while she estimates the cost of obtaining a license in multiple municipalities, she never claims that she would engage in First Amendment-protected activities anywhere other than Salt Lake City or Midvale.

¶24   Undifferentiated citation to various First Amendment frameworks will almost inevitably lead to inadequate briefing. *See, e.g., Cheek v. Clay Bulloch Constr. Inc.*, 2016 UT App 227, ¶¶ 30–33, 387 P.3d 611 (concluding that an argument was inadequately briefed, due in part to the undeveloped assertion of "multiple contractual theories, some of which are contradictory"). And requiring Kidd to develop a cogent First Amendment argument is more than making her run an appellate gauntlet before she can obtain relief. When a party advances proto-arguments without developing them into actual arguments, that party essentially asks this court to develop those arguments for her. And then rule on those arguments, often without the benefit of adversarial briefing because the opposing party was not given a focused target at which to aim. This is not the way we aspire to operate nor is it fair to the opposing party.

¶25   Because of the lack of clarity in Kidd's legal argument, as well as the absence of factual development noted above, we are unable to reach the merits of her claim. In short, Kidd has failed to develop an argument "that we can respond to" and has not demonstrated that Utah Code section 10-8-41.5 is an unconstitutional intrusion on First Amendment rights. *See Rose v. Office of Prof'l Conduct*, 2017 UT 50, ¶ 82, 424 P.3d 134.

¶26   Although unnecessary to the resolution of this case, we note two additional shortcomings of Kidd's argument, as these issues may arise in future cases. First, any First Amendment claim should specify the breadth of the challenge, as well as the specific relief sought. Yet Kidd never asserts whether she has raised a facial statutory challenge or a challenge that the statute is unconstitutional as applied to her, and her brief sometimes reads as if she is raising a facial challenge and sometimes uses language usually associated with an as-applied argument.

¶27   The distinction matters, both in terms of the tests applied and the available remedy. *See, e.g., Gillmor v. Summit Cty.*, 2010 UT 69, ¶ 27, 246 P.3d 102 (contrasting facial and as-applied constitutional challenges); *Bushco v. Utah State Tax Comm'n*, 2009 UT 73, ¶ 49, 225 P.3d 153 (explaining the overbreadth doctrine as a basis for a facial challenge on First Amendment grounds); *see also United States v. Stevens*, 559 U.S. 460, 472 (2010) (contrasting "typical" facial challenge requirements with an overbreadth challenge). The distinction may also inform a court's ability to reach the merits. "Particularized facts are what allow a court to issue a narrowly tailored and circumscribed remedy" in response to an as-applied claim. *Justice v. Hosemann*, 771 F.3d 285, 292 (5th Cir. 2014).

¶28 Second, the posture of Kidd's challenge is somewhat unique. Kidd was cited for violation of a city ordinance but challenged only the state statute authorizing that ordinance. Whether Kidd could succeed on such a challenge without also challenging the city ordinance, we need not and do not address. Nor do we opine on whether the analytical framework might shift depending on whether Kidd challenges the statute, the ordinance, or both.[6] We simply note these issues and caution parties to keep them in mind in future cases.

¶29 For the reasons set forth above, Kidd has failed to persuade us that the district court erred in denying her motion to dismiss with respect to her First Amendment claim.

### III. Equal Protection

¶30 Kidd also asserts that section 10-8-41.5 "denies [her] the Equal Protection of the Law in violation of the Fourteenth Amendment." Because Kidd did not adequately preserve this argument before the district court, we do not address it.

¶31 "As a general rule, claims not raised before the trial court may not be raised on appeal." *State v. Holgate*, 2000 UT 74, ¶ 11, 10 P.3d 346. This "preservation rule applies to every claim, including constitutional questions, unless a defendant can demonstrate that exceptional circumstances exist or plain error occurred." *Id.* (internal quotation marks omitted). Kidd has not advocated that either of those exceptions apply here.

¶32 Preservation requires that an issue "be presented to the trial court in such a way that the trial court has an opportunity to rule on [it]." *438 Main St. v. Easy Heat, Inc.*, 2004 UT 72, ¶ 51, 99 P.3d 801 (citation omitted). We have stated that the preservation "requirement puts the trial judge on notice of the asserted error and allows for correction at that time in the course of the proceeding." *Id.* "For a trial court to be afforded an opportunity to correct the error (1) the issue must be raised in a timely fashion[,] (2) the issue must be specifically raised[,] and (3) the challenging party must introduce

---

[6] We also do not address Kidd's failure to distinguish between any First Amendment protection potentially afforded escort agencies generally, based on artistic or other services provided by the agency as a whole, and any First Amendment protection that might be afforded her as an individual escort service provider.

supporting evidence or relevant legal authority." *Id.* (alterations in original) (citation omitted) (internal quotation marks omitted).

¶33 These principles also govern Kidd's assertion of a constitutional violation. "Preservation requires affording the district court a meaningful opportunity to rule on the ground that is advanced on appeal, and that implies, at a minimum, not just the invocation of a legal principle but also its application to the facts of the case." *Hill v. Superior Prop. Mgmt. Servs., Inc.*, 2013 UT 60, ¶ 46, 321 P.3d 1054.

¶34 In district court, Kidd primarily asserted that her First Amendment rights had been infringed. But on a few occasions, she incanted the phrase "equal protection." For example, Kidd asserted that "[i]nsofar as [section] 10-8-41.5 [a]uthorizes the City to require the additional license, the statute violates [her] First Amendment rights, and also [her] rights to Equal Protection of the Law under the Fourteenth Amendment." But Kidd did not cite and apply equal protection principles to her case. Indeed, the sole equal protection authority Kidd cites on appeal, *Romer v. Evans*, 517 U.S. 620 (1996), appears nowhere in her argument below.

¶35 Mere mention of a constitutional right, phrase, or principle does not raise a constitutional claim. *See 438 Main St.*, 2004 UT 72, ¶ 51 (requiring introduction of relevant legal authority); *cf. Rose*, 2017 UT 50, ¶ 80 (noting, "[a]t the risk of sounding pedantic, a federal equal protection argument should at the very least reference" the constitutional provision as well as "the case law interpreting that clause"). The concept of preservation—and the principles underlying its application—would be undone were we to conclude that, in this instance, Kidd made and preserved a claim that section 10-8-41.5 "denies [her] the Equal Protection of the Law in violation of the Fourteenth Amendment." A party may not simply point toward a pile of sand and expect the court to build a castle. In both district and appellate courts, the development of an argument is a party's responsibility, not a judicial duty.

¶36 Accordingly, we conclude that Kidd did not preserve her Equal Protection claim in the district court and we do not address it.

## CONCLUSION

¶37 Kidd did not preserve her Equal Protection challenge in the district court and has not adequately briefed her First Amendment challenge on appeal. We affirm.