*This opinion is subject to revision before final publication in the Pacific Reporter*

**2024 UT 38**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

TIFFANY BINGHAM,
*Appellant*,

*v.*

GEORGE C. GOURLEY, D.O., and MCKAY L. PLATT, M.D.,
*Appellees*.

No. 20230436
Heard April 15, 2024
Filed September 5, 2024

On Direct Appeal

Fourth District, Provo
The Honorable Darold J. McDade
The Honorable Sean M. Petersen
No. 200401253

Attorneys:

Stephen K. Christiansen, Kathleen M. Liuzzi, Joshua B. Cutler,
M. Kelton Gardner, Salt Lake City, for appellant

Benjamin K. Lusty, Cami R. Schiel, Brian P. Miller,
Andrew L. Roth, Salt Lake City, for appellee George C.
Gourley, D.O.

Kirk G. Gibbs, Devin H. Geier, Salt Lake City, for appellee
McKay L. Platt, M.D.

JUSTICE POHLMAN authored the opinion of the Court, in which
CHIEF JUSTICE DURRANT, ASSOCIATE CHIEF JUSTICE PEARCE,
JUSTICE PETERSEN, and JUSTICE HAGEN joined.

JUSTICE POHLMAN, opinion of the Court:

## INTRODUCTION

¶1 In this appeal, Tiffany Bingham challenges the constitutionality of the Utah Health Care Malpractice Act's (the Malpractice Act) four-year statute of repose. *See* UTAH CODE § 78B-3-404(1). The statute requires a plaintiff to commence an action covered by the Malpractice Act "within two years after the plaintiff or patient discovers, or through the use of reasonable diligence should have discovered the injury, whichever first occurs, *but not to exceed four years after the date of the alleged act, omission, neglect, or occurrence.*" *Id.* (emphasis added).

¶2 Bingham, whose claim against her doctors was dismissed under this statute of repose, contends that the statute violates the Utah Constitution's Open Courts Clause. Bingham also contends that the statute of repose is unconstitutional under both the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution and the Utah Constitution's analog, the Uniform Operation of Laws Provision.

¶3 The doctors respond that the statute violates none of these provisions. But in the event we identify an open courts violation, the doctors ask us to overrule *Berry ex rel. Berry v. Beech Aircraft Corp.*, 717 P.2d 670 (Utah 1985), in which this court established a three-part test to analyze challenges under this clause of our state constitution.

¶4 We conclude that Bingham has not shown any constitutional violation, and, at this time, we do not reconsider our open courts caselaw. Accordingly, we affirm the district court's order dismissing Bingham's claim.

## BACKGROUND[1]

¶5 In July 2010, Dr. George C. Gourley performed surgery on Bingham. After Bingham experienced post-operative complications, Gourley performed a second surgery, just eight days after the first, with Dr. McKay L. Platt assisting. For an extended period following the second surgery, Bingham continued

---

[1] When we review a district court's decision on a rule 12(b)(6) motion to dismiss, "we accept the factual allegations in the complaint as true and interpret those facts, and all reasonable inferences drawn therefrom, in a light most favorable to the plaintiff as the nonmoving party." *Feldman v. Salt Lake City Corp.*, 2021 UT 4, ¶ 2 n.1, 484 P.3d 1134 (cleaned up).

to experience health problems. After eventually seeking out the care of another physician, Bingham underwent corrective surgery in November 2017. Bingham's new physician found damage from the 2010 procedures, a discovery that led to the removal of her kidney.

¶6 In August 2020, Bingham sued Gourley and Platt (collectively, doctors). As relevant here, she brought a claim for negligence, alleging that the doctors breached the standard of care when treating her in 2010. She also alleged that she did not discover their breaches until November 2017. Recognizing that she had commenced her action more than "four years after the date of the alleged act, omission, neglect, or occurrence," Bingham also sought a declaration that the Malpractice Act's four-year statute of repose is unconstitutional. (Citing UTAH CODE § 78B-3-404(1).)

¶7 Gourley and Platt moved to dismiss Bingham's complaint. They argued that because she filed suit more than ten years after the alleged medical malpractice, her claim was time-barred by Utah Code subsection 78B-3-404(1), the Malpractice Act's statute of repose. They also defended the constitutionality of the statute. In response, Bingham did not defend the timeliness of her claim. Instead, she argued the merits of her constitutional challenges and invited the court to declare the statute of repose unconstitutional. *See Bright v. Sorensen*, 2020 UT 18, ¶ 42, 463 P.3d 626 (stating that, in response to a motion to dismiss a facially untimely complaint, the plaintiff "must affirmatively advance an exception to the applicable statute of limitations to avoid dismissal" and bears the "burden of proof or persuasion").

¶8 After hearing arguments, the court agreed with the doctors, concluded that the statute of repose met constitutional muster, and dismissed Bingham's negligence claim with prejudice. The court reasoned that the statute "does not violate the open courts clause because it is a non-arbitrary means of addressing a social or economic evil, which is set forth in [Utah Code section] 78B-3-402"—namely, "the prevention of increased costs related to medical malpractice insurance and patient insurance premiums caused by the increasing number of damages in medical malpractice lawsuits." The court similarly reasoned that the statute "doesn't violate the uniform operation of laws clause because it substantially furthers the goals of the [Malpractice] Act." And the court decided that having ruled against Bingham on her uniform operation of laws claim, "an equal protection analysis [under the

federal Constitution is] unnecessary because it would be less strict than using [the] uniform operation of law analysis." Still, the court noted that the statute "easily survives rational basis review." Bingham appeals.

## ISSUE AND STANDARD OF REVIEW

¶9    Bingham contends that the district court erred in granting the doctors' motion to dismiss, asserting that Utah Code subsection 78B-3-404(1) is an unconstitutional statute of repose. In particular, she argues that the statute violates the Utah Constitution's Open Courts Clause, *see* UTAH CONST. art. I, § 11, and its Uniform Operation of Laws Provision, *see id.* art. I, § 24. She also raises a related argument under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

¶10  We review the district court's decision granting a motion to dismiss for correctness, giving no deference to its decision. *Feldman v. Salt Lake City Corp.*, 2021 UT 4, ¶ 11, 484 P.3d 1134. Likewise, "we review the district court's determination of the constitutionality of a statute for correctness." *Id.* ¶ 12.

## ANALYSIS

¶11  In 1976, the Utah Legislature passed the Utah Health Care Malpractice Act. *See Lee v. Gaufin*, 867 P.2d 572, 584–85 (Utah 1993). As part of that Act, the legislature enacted Utah Code subsection 78B-3-404(1). It provides, "A malpractice action against a health care provider shall be commenced within two years after the plaintiff or patient discovers, or through the use of reasonable diligence should have discovered the injury, whichever first occurs, *but not to exceed four years after the date of the alleged act, omission, neglect, or occurrence.*" UTAH CODE § 78B-3-404(1) (emphasis added). This court has repeatedly said that this four-year limitation "functions as a statute of repose." *Jensen v. Intermountain Healthcare, Inc.*, 2018 UT 27, ¶¶ 15, 18, 424 P.3d 885. That is, the four years "run[] from the time the negligent act is committed[,] and [the statute] terminates all legal remedies for malpractice not filed within four years, even if the injury caused by the malpractice could not have been discovered by the plaintiff or patient during that period."[2] *Lee*, 867 P.2d at 574–75.

---

[2] By contrast, a statute of limitations "establish[es] a time limit for suing in a civil case, based on the date when the claim accrued

(continued . . .)

¶12 Bingham commenced her action in 2020 for alleged negligence that occurred in 2010. Because this time frame exceeds the four years allowed by subsection 404(1), all parties agree that the statute bars her claim. Thus, the issue that was before the district court—and the issue now before us—is whether Bingham has established that the statute is unconstitutional under any of her theories, bearing in mind the general rule that "[a]ll statutes are presumed to be constitutional and the party challenging a statute bears the burden of proving its invalidity." *Salt Lake City v. Kidd*, 2019 UT 4, ¶ 21, 435 P.3d 248 (cleaned up).

¶13 We begin with Bingham's open courts argument. We then turn to her uniform operation and related equal protection arguments. Without reconsidering our caselaw interpreting the relevant constitutional provisions, we conclude that Bingham has not shown that the district court erred in determining that Utah Code subsection 78B-3-404(1) does not infringe on constitutional rights. Accordingly, we affirm the court's dismissal of Bingham's complaint.

## I. BINGHAM HAS NOT ESTABLISHED THAT THE MALPRACTICE ACT'S STATUTE OF REPOSE FAILS EXAMINATION UNDER OUR OPEN COURTS JURISPRUDENCE

¶14 Bingham first contends that the Malpractice Act's statute of repose violates the Utah Constitution's Open Courts Clause "by effectively eliminating an existing legal remedy without providing a reasonable alternative remedy and without a clear social or economic evil to be eliminated." She further argues that the statute's "time limit is arbitrary and unreasonable on its face because the four-year bar will inevitably deny a significant number of individuals, like Bingham, their right to seek redress for legal injuries that are yet to be discovered." We conclude that Bingham has not shown that Utah Code subsection 78B-3-404(1) violates the Open Courts Clause.

¶15 The Open Courts Clause states, "All courts shall be open, and every person, for an injury done to the person in his or her person, property, or reputation, shall have remedy by due course of law, which shall be administered without denial or unnecessary delay; and no person shall be barred from prosecuting or defending before any tribunal in this State, with or without counsel, any civil

_____

(as when the injury occurred or was discovered)." *Statute of Limitations*, BLACK'S LAW DICTIONARY (12th ed. 2024).

cause to which the person is a party." UTAH CONST. art. I, § 11. In *Berry ex rel. Berry v. Beech Aircraft Corp.*, 717 P.2d 670 (Utah 1985), we held that although "the Legislature has great latitude in defining, changing, and modernizing the law," the Open Courts Clause limits that legislative power "for the benefit of those persons who are injured in their persons, property, or reputations." *Id.* at 676.

¶16    Beginning with *Berry*, *id.* at 680, we have used a three-part test to determine whether a legislative act runs afoul of the clause, *Waite v. Utah Lab. Comm'n*, 2017 UT 86, ¶ 19, 416 P.3d 635. First, we look to whether the legislature has abrogated a common law cause of action. *Id.* Second, if it has abrogated a cause of action, we next "determine whether the law provides an injured person an effective and reasonable alternative remedy." *Id.* (cleaned up). Third, "[i]f there is no substitute or alternative remedy provided," we will uphold the abrogation of a cause of action against an open courts challenge "only if there is a clear social or economic evil to be eliminated and the elimination of an existing legal remedy is not an arbitrary or unreasonable means for achieving the objective." *Id.* (cleaned up).

¶17    The *Berry* test has been the subject of considerable criticism since its adoption in 1985. Some have argued for its repudiation on the basis that it violates separation of powers principles. *See, e.g.*, *Judd v. Drezga*, 2004 UT 91, ¶ 11, 103 P.3d 135 (declining the Utah Attorney General's invitation "to disavow our *Berry* line of cases, and to recognize that by adopting the *Berry* approach we have assumed powers and duties not properly held by the court, but reserved for the legislature"). And members of this court have challenged its footing and argued for its replacement. *See, e.g.*, *Waite*, 2017 UT 86, ¶ 36 (Lee, A.C.J., concurring in the judgment) ("*Berry* has outlived its usefulness. The time has come to overrule it."); *id.* ¶ 95 (Pearce, J., concurring) (collecting cases).

¶18    To date, the test's core elements have withstood these challenges. *See, e.g., id.* ¶¶ 31–34 (majority opinion) (stating it was not the appropriate case to reach the issue of whether the *Berry* test should be overturned); *Judd*, 2004 UT 91, ¶ 11. But despite the test's resilience, our application of it has evolved.

¶19    Notably, in *Judd*, this court recognized "an obligation of deference to legislative judgments in a *Berry* review, and to the extent this differ[ed] from our prior application of *Berry*," we "disavowed" those prior applications. 2004 UT 91, ¶ 11. We

emphasized this shift again in *Waite*, explaining that although pre-*Judd* open courts cases began with the presumption that the challenged statute was unconstitutional, that view "is no longer good law." 2017 UT 86, ¶¶ 21–22. And with this evolution, Bingham accepts the burden of establishing that the three parts of the open courts test are in her favor.[3] *See supra* ¶ 16.

¶20 For purposes of this appeal, there is no dispute that Bingham satisfies the first two parts of our Open Courts Clause test. The doctors do not take issue with the propositions that Utah Code subsection 78B-3-404(1) abrogates a cause of action (medical malpractice) and that the legislature has not provided an alternative remedy. *See Waite*, 2017 UT 86, ¶ 19. That consensus leaves us to consider the third part of the test, which has two components. *Id.* ¶¶ 19–20. The first is whether the legislature abrogated a cause of action in response to a "clear social or economic evil." *Id.* ¶ 21 (cleaned up). The second is whether eliminating the cause of action was "an arbitrary or unreasonable means for achieving the objective." *Id.* ¶ 28 (cleaned up).

*A. Clear Social or Economic Evil*

¶21 Our inquiry on the first component is "limited." *See Judd*, 2004 UT 91, ¶ 13. This means that even when the "empirical truth" of the legislature's stated purpose for abrogating a remedy is disputed, "we will not undertake the same investigation as the legislature, reviewing its data-gathering methods and conclusions to determine whether the stated legislative findings are perfectly

---

[3] In her opening brief, Bingham advocates that we apply "heightened scrutiny" to her challenge under the Open Courts Clause. She cites the test articulated in *Lee v. Gaufin*, 867 P.2d 572, 582–83 (Utah 1993), which we apply to challenges to legislation brought under the Uniform Operation of Laws Provision implicating Open Courts Clause rights. *See infra* ¶ 40. The doctors discourage us from applying the *Lee* test to Bingham's open courts challenge, arguing that "embracing a heightened scrutiny test never articulated in *Berry* would further confuse open courts clause jurisprudence." We agree with the doctors. Since its inception, the *Berry* test has stated the standard of scrutiny: it requires the court to ask whether the legislature, in abrogating a remedy, redressed a "clear social or economic evil" in a manner that was not "arbitrary or unreasonable." *Berry*, 717 P.2d at 680. We see no reason to overlay the *Berry* test with a different standard of scrutiny.

correct." *Id.* Instead, "[w]hen an issue is fairly debatable, we cannot say that the legislature overstepped its constitutional bounds when it determined that there was a crisis needing a remedy." *Id.* ¶ 15.

¶22 Applying the first component of the *Berry* test, the district court concluded that Utah Code subsection 78B-3-404(1) "address[es] what the Legislature found to be a [crisis] in the health care industry caused by the increasing number of malpractice claims and the amount of judgments and settlements." In so concluding, the court expressly cited and deferred to the legislature's findings about the crisis, which are codified at Utah Code section 78B-3-402. Among other things, the legislature found that rising malpractice claims, judgments, and settlements "substantially increased the cost of medical malpractice insurance . . . . [and] health care." UTAH CODE § 78B-3-402(1). It also found that some "health care providers are discouraged from continuing to provide services because of the high cost and possible unavailability of malpractice insurance." *Id.*

¶23 Given these legislative findings, the district court concluded that "whether a crisis in the health care industry exists, and [what] . . . causes [it], [are] fairly debatable and courts cannot overturn the work of the Legislature by substituting their view on a policy dispute for the [Legislature's view]." Although Bingham disagrees and insists that there is no "clear social or economic evil to be eliminated," she has not shown error in the court's analysis under *Judd*'s deferential standard. *See* 2004 UT 91, ¶¶ 11, 15.

¶24 In her opening brief, Bingham does not engage with the "fairly debatable" standard and instead largely tries to meet her burden by urging us to apply pre-*Judd* caselaw, in which we invalidated other statutes of repose because we doubted legislative views on rising insurance premiums and growing jury verdicts. *See* *Lee v. Gaufin*, 867 P.2d 572, 583–88 (Utah 1993) (examining legislative data to declare a statute of repose applicable to minors' claims for medical malpractice unconstitutional under the uniform operation of laws provision); *Berry*, 717 P.2d at 672–73, 680–83 (questioning, as part of an open courts analysis, the legislature's reliance on national data in enacting a statute of repose for products liability claims). Bingham invites us to follow suit and to reject the

legislature's codified findings of a health industry crisis.[4] But the doctors counter that Bingham's reliance on these cases does not "take account of the change that *Judd* worked on *Berry*." On this score, we agree.

¶25   Although Bingham acknowledges *Judd*, she minimizes its impact on the applicability of our pre-*Judd* caselaw, arguing that this court "continues to apply the *Berry* test in essentially the same form." Yet the lens of our pre-*Judd* jurisprudence was less deferential to legislative enactments. As we explained in *Waite*, our analysis in *Judd* "clarified that the view of the presumption of constitutionality we expressed in [our earlier cases] is no longer good law." 2017 UT 86, ¶ 22 (citing *Judd*, 2004 UT 91, ¶ 11). Thus, we cannot simply adopt our criticisms of legislative findings from the cases Bingham cites and reach the same conclusions here.

¶26   Instead, to succeed in challenging the statute of repose under the first component of *Berry*'s third part, Bingham must show that the legislature's concern over increasing medical malpractice claims and judgments was not "fairly debatable." *Judd*, 2004 UT 91, ¶ 15. But Bingham has not made that showing.

¶27   In reply, Bingham acknowledges the "fairly debatable" standard but claims it is unmet because "the legislature, by its own admission, had no *reliable* data to justify its actions." In support, Bingham cites a 1976 report by the Office of Legislative Research addressing medical malpractice insurance problems. The report stated that "no final conclusions" could be reached as to the appropriateness of high malpractice premiums until the State

---

[4] Bingham also points to *Horton v. Goldminer's Daughter*, 785 P.2d 1087 (Utah 1989), *abrogated as recognized by Waite*, 2017 UT 86, ¶¶ 21–22 & n.45, and to *Vega v. Jordan Valley Medical Center, LP*, 2019 UT 35, 449 P.3d 31. But neither case helps her cause. In *Horton*, where we struck down a statute of repose for construction claims as violating the Open Courts Clause, there were no legislative findings or evidence of a policy dispute. *See* 785 P.2d at 1094, 1096. Thus, not only did *Horton* pre-date *Judd*, but we had no opportunity to consider the legislature's views on the existence of a "clear social or economic evil." As for *Vega*, there, we expressly endorsed the legislature's view that "rising health care costs are a tremendous problem facing both our state and the nation writ large." 2019 UT 35, ¶ 23. Thus, *Vega* does not support Bingham's invitation to reject the legislature's findings identifying a crisis.

Insurance Department studied the data of each insurance company. OFF. OF LEGIS. RSCH., STATE OF UTAH, MEDICAL MALPRACTICE INSURANCE PROBLEMS: REPORT TO THE 41ST LEGISLATURE, at 20 (Jan. 1976) [hereinafter LEGISLATIVE RESEARCH REPORT]. But that single observation about the need for additional study does not suggest that there wasn't a crisis that warranted legislative attention. In fact, the fifty-page report was dedicated to addressing the problems posed by "sizable increases in premiums for malpractice insurance" and the even "more serious problem" faced by some states "of a lack of malpractice insurance at any price." *Id.* at 2. Thus, contrary to Bingham's argument, the report supports the claim that the issue was at least fairly debatable.[5] *See Waite*, 2017 UT 86, ¶ 24.

¶28 Further, by suggesting that the legislature's declaration of a crisis was premature, Bingham invites us to go beyond what *Judd* allows. *See* 2004 UT 91, ¶ 13. Even if Bingham's citation suggests that others disagreed with the legislature's findings, it exceeds the scope of our review to determine whether those findings were "perfectly correct." *Id.* Bingham must demonstrate that the existence of a crisis was not fairly debatable. And without prevailing on that question, "we cannot say that the legislature overstepped its constitutional bounds when it determined that there was a crisis needing a remedy." *Waite*, 2017 UT 86, ¶ 24 (cleaned up).

### B. Arbitrary and Unreasonable Means

¶29 The second component of *Berry*'s third part asks if abrogation of a remedy is an arbitrary or unreasonable means for achieving a legislative objective. *Id.* ¶ 28. Here, the district court

---

[5] Bingham also cites a 1975 report conducted by the Malpractice Insurance Evaluation Committee in support of her claim that there was no "clear" evil that needed addressing. The portion of the report Bingham cites advocated for more understanding of the causes behind the malpractice insurance crisis. *See* REPORT OF THE GOVERNOR'S MALPRACTICE INSURANCE EVALUATION COMMITTEE, at 9–12 (Nov. 1975). But the report also affirmed that there were "many and varied problems connected with" malpractice insurance that were of such a "serious" nature that immediate legislative action was warranted. *Id.* at 1–3. Thus, the report supports the conclusion that the issue was at least fairly debatable. *See Waite*, 2017 UT 86, ¶ 24.

concluded that Utah Code subsection 78B-3-404(1) "is a nonarbitrary and reasonable means of addressing what the Legislature found to be a [crisis] in the health care industry caused by the increasing number of malpractice claims and the amount of judgments and settlements." We conclude that Bingham has not demonstrated error in the district court's analysis of this component.

¶30 We start by considering the legislature's findings regarding its chosen means of addressing the crisis—findings to which we owe deference. *See Judd*, 2004 UT 91, ¶ 11 ("[W]e recognize an obligation of deference to legislative judgments in a *Berry* review . . . ."). The legislature determined that to alleviate "the adverse effects" of rising medical malpractice insurance premiums and insurance claims on "the public's health care system," it was "necessary to . . . enact[] measures designed to encourage private insurance companies to continue to provide health-related malpractice insurance." UTAH CODE § 78B-3-402(1), (2). Its findings further explain that limiting the time to commence actions against health care providers would "encourage private insurance companies to continue to provide health-related malpractice insurance" by enabling "professional liability insurance premiums [to] be reasonably and accurately calculated." *Id.* § 78B-3-402(2), (3).

¶31 We agree with the district court that Bingham has not shown that the statute of repose is arbitrary or unreasonable under the *Berry* test. The legislature determined that it needed to respond to a crisis and to protect the public's interest in ensuring available and affordable medical care. Just as we recognized in *Judd* in considering a challenge to the Malpractice Act's damages cap, the legislature's determination "was logically followed by action designed to control costs." *See* 2004 UT 91, ¶ 16.

¶32 And the legislature did not resort to a statute of repose without some justification. Committees commissioned to study the issue recommended the four-year statute of repose over the previous ten-year maximum time limit for health care claims. The Committees observed that the ten-year limit meant that "a claim for an injury in 1975 can in reality be filed up to 1985," which caused a "long-tail" situation, forcing insurers "to maintain inordinately large reserves for claims that may not be filed for ten years after the alleged injury occurs." REPORT OF THE GOVERNOR'S MALPRACTICE INSURANCE EVALUATION COMMITTEE, at 3 (Nov. 1975) [hereinafter

GOVERNOR'S COMMITTEE REPORT]; *see also* LEGISLATIVE RESEARCH REPORT, at 26 ("The ten year maximum time limit . . . has the effect of extending the 'long tail' and adds to the uncertainty of predicting malpractice claims."). One report even opined that the "long-tail" was "one of the most harmful causes of the present situation," adding that litigation costs and difficulties caused by stale claims—including the "loss of witnesses and collateral evidence, stale records, and inevitable changes in the standards of medical practice"—contribute to the crisis.[6] GOVERNOR'S COMMITTEE REPORT, at 3.

¶33  These sources demonstrate that the legislature addressed what lawmakers perceived as a serious public policy problem after receiving expert advice about how best to resolve it. Even if this court were to disagree with the legislature's policy choice, "our power does not extend so far as to permit imposition of our views on such policy disputes." *Waite*, 2017 UT 86, ¶ 27 (cleaned up). Thus, under the circumstances here, we cannot say that the four-year statute of repose was an arbitrary, unreasonable way to achieve the legislature's stated purpose of protecting the public's health care system.

¶34 Bingham resists this conclusion, suggesting first that despite the stated legislative purpose of "provid[ing] a reasonable time in which actions may be commenced against health care providers," UTAH CODE § 78B-3-402(3), the statute of repose is unreasonable because statutes of repose *by design* do not "provide a reasonable time for the filing of every type of malpractice action." She reasons that because the statute's "four-year bar will inevitably deny a significant number of individuals . . . their right to seek redress for legal injuries that are yet to be discovered," the statute's

---

[6] Both reports included the statute of repose as their top recommendation to address the rising medical malpractice premiums. *See* GOVERNOR'S COMMITTEE REPORT, at 3; LEGISLATIVE RESEARCH REPORT, at 26. The legislature's Social Services Study Committee, which was responsible for one of those reports, made its recommendation after hearing from experts and an advisory committee, which included representation from the Utah Trial Lawyers Association. *See* LEGISLATIVE RESEARCH REPORT, at 25.

time limit "is arbitrary and unreasonable."[7] But statutes of repose, which by their very nature have the potential to cut off claims before they accrue, are "not automatically unconstitutional." *See Waite*, 2017 UT 86, ¶ 18. That is because "[t]o hold every statute of repose unconstitutional without regard to the legislative purpose could result in a legislative inability to cope with widespread social or economic evils." *Berry*, 717 P.2d at 680. So, it is not enough to simply assert that a statute of repose is unreasonable because it will bar some claims. *See, e.g.*, *Craftsman Builder's Supply, Inc. v. Butler Mfg. Co.*, 1999 UT 18, ¶¶ 13–15, 21–23, 974 P.2d 1194 (holding that the builders statute of repose is constitutional under the open courts clause even though it "cuts off causes of action before they accrue"). Rather, to show the statute is unconstitutional, a party must demonstrate that it fails the *Berry* test. *See Waite*, 2017 UT 86, ¶ 18.

¶35 Bingham also asserts that Utah Code subsection 78B-3-404(1) is arbitrary and unreasonable on the ground that no "rational explanation" exists to justify the distinction between a patient who had a foreign object wrongfully left in the patient's body, and a patient—like herself—whose injuries "are undetectable." Bingham correctly points out that instead of acting as a blanket four-year limitation, section 404 permits certain malpractice plaintiffs to bring suit after four years if the plaintiff commences the claim "within one year after the plaintiff or patient discovers, or through the use of reasonable diligence should have discovered, the existence of [a] foreign object wrongfully left in the patient's body, whichever first occurs." UTAH CODE § 78B-3-404(2)(a). But the fact that the legislature could have barred more claims does not render its decision to bar claims like Bingham's "arbitrary and unreasonable."

¶36 Indeed, "[w]hen attempting to resolve problems of policy, the legislature is inevitably forced to draw lines." *Judd*, 2004 UT 91,

---

[7] Bingham asserts that a "significant number" of individuals are deprived a remedy under the statute of repose, but she provides no source to back that up. We recognize that the district court decided this case on a motion to dismiss, but Bingham did not take the position before the district court that she needed to conduct any kind of discovery to establish her constitutional challenge, and she does not assert error in the district court's procedural treatment of this case.

¶ 29. And here, the legislature chose to create an exception for foreign-object claims, which, by their nature, do not present the same difficulties that other stale claims present.[8] As one court explained, problems "of proof, and changes in the standard of care, do not plague foreign object cases, no matter how long ago the alleged malpractice occurred. The later discovery of the foreign object is, for all practical purposes, proof of some earlier negligence on the part of a health care provider." *Harlfinger v. Martin*, 754 N.E.2d 63, 72 (Mass. 2001). "By comparison, the passage of time makes other types of malpractice claims difficult to defend . . . ." *Id.*; *see also supra* ¶ 32. Thus, contrary to Bingham's assertion, there is a rational explanation for the legislature's line-drawing consistent with its stated purpose, and her complaint about that choice does not overcome the deference we owe to "legislative judgments in a *Berry* review." *See Judd*, 2004 UT 91, ¶ 11.

¶37  In sum, Bingham has not persuaded us that the district court erred in rejecting her open courts challenge to the Malpractice Act's statute of repose.[9] We now turn to her remaining constitutional theories.

## II. BINGHAM HAS NOT SHOWN A CONSTITUTIONAL INFIRMITY UNDER THE UNIFORM OPERATION OF LAWS PROVISION OR THE EQUAL PROTECTION CLAUSE

¶38  Bingham next contends that the district court erred in dismissing her claim because Utah Code subsection 78B-3-404(1) violates the Utah Constitution's Uniform Operation of Laws Provision and its federal analog, the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. She argues the statute "does so by operating in a discriminatory fashion against individuals who suffer undetectable injuries which are not discovered until after the four-year statute of repose has run." In

---

[8] The Social Services Study Committee recommended this line-drawing to the legislature. When the Committee endorsed the four-year statute of repose, it also recommended "that the limitation period not begin to run in the case of a foreign object left in the body . . . until discovery of the object." LEGISLATIVE RESEARCH REPORT, at 26; *see also* UTAH CODE § 78B-3-404(2)(a).

[9] The doctors invite us to overrule *Berry* if Bingham persuaded us that the statute of repose violated the Open Courts Clause. Because we reject Bingham's challenge under controlling precedent, we do not reconsider *Berry* or its progeny at this time.

her view, unlike people who suffer "obvious" injuries and "have ample time to file a lawsuit," "individuals with difficult-to-detect injuries are uniquely susceptible to losing their constitutional right to seek judicial redress." She also complains that the statute "treats similarly situated individuals differently" by "granting an exception . . . to those in whom a foreign object was discovered but not to individuals who have equally been deprived of an opportunity to seek redress for a medical injury, simply because those injuries could not be discovered during the repose period." (Citing UTAH CODE § 78B-3-404(2)(a).)

*A. Bingham Has Not Shown that Subsection 404(1) Runs Afoul of the Uniform Operation of Laws Provision*

¶39   The Uniform Operation of Laws Provision states, "All laws of a general nature shall have uniform operation." UTAH CONST. art. I, § 24. We have explained that this provision "guards against discrimination within the same class and helps ensure that statutes establishing or recognizing rights for certain classes do so reasonably given the statutory objectives." *Judd v. Drezga*, 2004 UT 91, ¶ 19, 103 P.3d 135.

¶40  Upholding legislation implicating open courts rights against a uniform operation challenge requires the legislation (1) to be "reasonable"; (2) to have "more than a speculative tendency to further the legislative objective and, in fact, actually and substantially furthers a valid legislative purpose"; and (3) to be "reasonably necessary to further a legitimate legislative goal." *Id.* (cleaned up).

¶41   As with our *Berry* analysis, "our uniform operation of the laws analysis is guided by the well-settled proposition that all statutes are presumed to be constitutional and the party challenging a statute bears the burden of proving its invalidity." *Merrill v. Utah Lab. Comm'n*, 2009 UT 26, ¶ 5, 223 P.3d 1089 (cleaned up). Bingham does not take issue with this proposition. And she further accepts the burden of persuasion on all three components of the uniform operation test.[10]

---

[10] Our articulation of the uniform operation test to legislation implicating open courts rights has not expressly assigned a burden of persuasion. *See, e.g.*, *Judd*, 2004 UT 91, ¶ 19; *Lee v. Gaufin*, 867 P.2d 572, 583 (Utah 1993). But we have repeatedly affirmed the well-

(continued . . .)

¶42 When open courts rights are implicated, we have described the uniform operation test as setting "a higher standard" than that imposed by the *Berry* test for the legislation to meet constitutional muster. *Judd,* 2004 UT 91, ¶ 21. Although both tests require a determination that the subject legislation is a reasonable means of implementing a legitimate legislative purpose, our analysis under article I, section 24 additionally requires that the legislation "be reasonably necessary to achieve the [legislative] goals, and, in fact, actually and substantially further them." *Id.*

¶43 Thus, it follows that it is easier for Bingham to demonstrate a constitutional infirmity under the uniform operation analysis compared to an open courts analysis. Yet we have also explained that, like the open courts analysis, "we do not proceed in our analysis under article I, section 24 as if we were called upon to

---

settled principle that "[a]ll statutes are presumed to be constitutional and the party challenging a statute bears the burden of proving its invalidity." *Salt Lake City v. Kidd*, 2019 UT 4, ¶ 21, 435 P.3d 248 (cleaned up); *see also Vega v. Jordan Valley Med. Ctr., LP*, 2019 UT 35, ¶ 12, 449 P.3d 31 (requiring all doubts about a statute's validity to be resolved "in favor of constitutionality").

In some instances, the burden of proof shifts to the proponent of a statute when the party arguing unconstitutionality has shown that the statute infringes a constitutional right. *See, e.g., Utah Safe to Learn-Safe to Worship Coal., Inc. v. State*, 2004 UT 32, ¶ 24, 94 P.3d 217. And at least one former member of this court has advocated for shifting the burden of demonstrating constitutionality of a statute to its proponent when the statute infringes on interests protected by the Open Courts Clause. *See Condemarin v. Univ. Hosp.*, 775 P.2d 348, 368 (Utah 1989) (Zimmerman, J., concurring in part); *Lee*, 867 P.2d at 591 (Zimmerman, J., concurring in result).

In this case, Bingham has not advocated for a shift in burden under either the *Berry* test or the uniform operation test. Instead, as she did below, she argues that *she* has shown a constitutional violation. She has not argued that the burden of proving or disproving any element of these tests falls on the doctors or that her claim should survive because they have failed to meet *their* burden. Because Bingham has assumed the burden of persuasion, we resolve this appeal as she presents it. We leave for another day the question of whether the burden of proving any component of the *Berry* test or the uniform operation test when open courts rights are implicated falls on the statute's proponent.

answer these questions in the first instance." *Id.* ¶ 22. Instead, we conduct this uniform operation analysis in a manner that gives "appropriate deference to the policy choices of the citizens' elected representatives." *Id.*

¶44 Like its analysis concerning the Open Courts Clause, the district court determined that subsection 404(1) "doesn't violate the uniform operation of laws clause because it substantially furthers the goals of the [Malpractice] Act." The court explained that "[c]utting off malpractice claims after a specified time will actually and substantially further the Malpractice Act's objective and is otherwise reasonably necessary to further a legislative goal." Giving appropriate deference to the legislature's policy choices and considering Bingham's burden to demonstrate unconstitutionality, we conclude that Bingham has not shown error in the district court's analysis.[11]

¶45 First, for the same reasons we reject Bingham's open courts challenge, *see supra* ¶¶ 31–37, we conclude that she has not shown error in the district court's determination that the Malpractice Act's statute of repose is a reasonable means for achieving a legitimate legislative goal: "to protect the public" from the "adverse effects" of rising medical malpractice insurance costs by "provid[ing] a reasonable time in which actions may be commenced against health

---

[11] In analyzing Bingham's uniform operation claim, the district court did not address whether, as Bingham claimed, subsection 404(1) treats people differently or treats people in different circumstances as if their circumstances were the same. *See Lee*, 867 P.2d at 577 (explaining that for a law to be constitutional under the uniform operation of laws provision, the law must "operate[] uniformly on all persons similarly situated within constitutional parameters" (cleaned up)); *see also supra* ¶ 39. The court also did not assess whether, having rejected Bingham's open courts claim, the three-part test articulated in *Lee* applied. *See* 867 P.2d at 581 (explaining that a higher level of scrutiny applies to a uniform operation challenge when the challenged legislation "implicates" rights under the open courts clause); *see also supra* ¶ 42. Although the doctors briefly question the applicability of the *Lee* test, the parties do not engage substantively on these preliminary questions, and they instead focus their analysis on the test's three elements. We therefore do the same. We assume, for purposes of our analysis, that the operation of subsection 404(1) is not uniform and that *Lee*'s three-part test applies.

care providers while limiting that time to a specific period for which professional liability insurance premiums can be reasonably and accurately calculated." UTAH CODE § 78B-3-402(2), (3). We see no daylight between the requirement under our uniform operation analysis that the legislation be "reasonable" and have "more than a speculative tendency to further . . . a legitimate legislative goal," *Judd*, 2004 UT 91, ¶ 19 (cleaned up), and the *Berry* test's requirement that legislation abrogating a remedy be a reasonable means for redressing a "clear social or economic evil," *id.* ¶ 11 (cleaned up). Thus, because Bingham has not shown the statute of repose fails under *Berry*'s third part, we likewise conclude that she has not shown error relative to the corresponding part of the uniform operation test.

¶46   That leads us to ask whether Bingham has shown that the statute of repose is unconstitutional under the remaining components of the uniform operation test—the components that demand more than *Berry* requires of the legislation. As noted, these components require that we consider whether the legislation is "reasonably necessary to achieve the [legislative] goals," and whether the legislation, "in fact, actually and substantially further[s] them." *Id.* ¶ 21. We conclude that Bingham has not met her burden because she has not provided a basis on which we can decide that the statute of repose was not reasonably necessary to achieve the legislative goals of stabilizing medical malpractice premiums or that the statute does not actually and substantially further that goal.

¶47   In support of her uniform operation claim, Bingham continues the refrain that the statute of repose is unreasonable because it bars a malpractice claim that could not be discovered within four years. But, as we've already explained, a statute of repose is not unreasonable simply because it cuts off potentially valid claims. *See supra* ¶ 34. Bingham could succeed by showing that, even if reasonable, the statute of repose was not reasonably *necessary* to further the legislative goals, or that the statute doesn't actually and substantially further those goals. *See Judd*, 2004 UT 91, ¶ 19. But Bingham doesn't make either showing.

¶48   Instead, she cites an Ohio case from 1987, arguing that a medical malpractice statute of repose "does not further the goal of alleviating the alleged medical malpractice insurance crisis." (Citing *Gaines v. Preterm-Cleveland, Inc.*, 514 N.E.2d 709, 714 (Ohio 1987).) Yet, a more recent decision from the same court applied a

presumption of constitutionality and rejected a constitutional challenge to Ohio's four-year medical malpractice statute of repose. *See Ruther v. Kaiser*, 983 N.E.2d 291, 294, 296, 300 (Ohio 2012); *see also Antoon v. Cleveland Clinic Found.*, 71 N.E.3d 974, 983–84 (Ohio 2016). The court upheld its legislature's "policy decision to grant Ohio medical providers the right to be free from litigation based on alleged acts of medical negligence occurring outside a specified time period," even if the claim was undiscovered until after the period had ended. *Ruther*, 983 N.E.2d at 296. Thus, *Gaines* has little persuasive value. Its conclusion has been supplanted by the Ohio court's application of the presumption of constitutionality that we, too, here apply.

¶49 Similarly, Bingham's citation to a Washington case from 1998 is equally inapposite. (Citing *DeYoung v. Providence Med. Ctr.*, 960 P.2d 919, 924–25 (Wash. 1998) (en banc).) There, the court determined that "[t]he relationship between the goal of alleviating any medical insurance crisis and the class of persons affected by the [relevant] statute of repose is too attenuated to survive [even] rational basis scrutiny." *DeYoung*, 960 P.2d at 925. The court reached its conclusion based on its view that the materials before the legislature were insufficient to support the belief that adopting an eight-year statute of repose would meaningfully impact medical malpractice insurance rates. *Id.* But under the principles espoused in *Judd*, we can't engage in the same second-guessing of the data before our legislature.[12] Had Bingham shown that, in fact, the expectations of the legislature have not been met, then she may have been able to satisfy the uniform operation test. But she doesn't engage on that component, and we cannot declare a statute unconstitutional under the applicable standard by simply substituting our view (or another court's view) of the data for the legislature's. *See supra* ¶¶ 30, 36; *see also Judd*, 2004 UT 91, ¶¶ 28–29 (concluding that the legislature's purpose in enacting a damages

---

[12] Bingham also points to *Lee*, in which we held that the Malpractice Act's cutting off minors' malpractice claims "does not further the legislative objective . . . of curbing and reducing malpractice premiums and of ensuring reasonably priced health-care services to the people of Utah and is not necessary to accomplish those ends." 867 P.2d at 588. But given *Judd*'s instruction, we cannot simply rely on this statement in *Lee* and extend that holding here.

cap under the Malpractice Act is valid and legitimate and was a reasonably necessary means of achieving its purpose).

*B. Bingham Has Not Established an Equal Protection Violation*

¶50 Lastly, Bingham contends that Utah Code subsection 78B-3-404(1) violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. Although the district court observed that "an equal protection analysis [under the federal Constitution is] unnecessary because it would be less strict than using [Utah's] uniform operation of law analysis," the court concluded that the Malpractice Act's statute of repose "easily survives rational basis review."

¶51 The Equal Protection Clause provides, "No State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1. As Bingham recognizes, "[t]he general rule is that legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest." *Rose v. Off. of Pro. Conduct*, 2017 UT 50, ¶ 80, 424 P.3d 134 (quoting *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 440 (1985)). Indeed, state laws "must treat similarly situated people alike unless a reasonable basis exists for treating them differently." *Id.* (cleaned up). But "merely identifying classes is not enough to demonstrate an equal protection violation." *Id.* ¶ 81. And it is well established that where "no suspect classification or violation of a fundamental right is involved, a difference in treatment need be only rationally related to a valid public purpose to withstand equal protection scrutiny." *Id.* ¶ 80 (cleaned up).

¶52 Bingham contends that subsection 404(1) treats similarly situated people differently in violation of the Equal Protection Clause. She invites us to review her challenge under the federal strict scrutiny standard because, in her view, subsection 404(1) impinges upon the exercise of a fundamental right. She further argues that subsection 404(1)'s classification of plaintiffs with difficult-to-detect injuries cannot survive strict scrutiny review because this classification is not "precisely tailored to serve a compelling governmental interest."

¶53 Bingham's argument fails because she has not shown that subsection 404 impairs a fundamental right. In the district court, Bingham asserted that "Section 404 impinges on [her] fundamental right to judicial redress under the Open Courts clause." Even

assuming Bingham maintains that position on appeal,[13] our caselaw has not characterized article I, section 11 rights as fundamental. *See Judd*, 2004 UT 91, ¶ 30 (stating that "article I, section 11 rights are not properly characterized as 'fundamental'"). So, without Bingham showing that subsection 404 affects a fundamental right, her equal protection claim is properly analyzed under rational basis review.[14] *See Rose*, 2017 UT 50, ¶¶ 80–81. As a result, subsection 404(1)'s purported classification of plaintiffs with difficult-to-detect injuries "need be only rationally related to a valid public purpose to withstand equal protection scrutiny." *See id.* ¶ 80 (cleaned up).

¶54 Given that Bingham has not shown error in the district court's conclusion that the challenged statute is a "reasonable means of addressing what the Legislature found to be a [crisis] in the health care industry," *supra* ¶¶ 29, 31, 33, we cannot conclude that the statute is not "rationally related to a valid public purpose," *see Rose*, 2017 UT 50, ¶ 80 (cleaned up). We therefore affirm the district court's decision that subsection 404(1) also survives Bingham's equal protection challenge.

## CONCLUSION

¶55 We reject Bingham's constitutional challenge to the Utah Health Care Malpractice Act's four-year statute of repose because she has not shown that the statute is unconstitutional under Utah's Open Courts Clause, Utah's Uniform Operation of Laws Provision, or the federal Constitution's Equal Protection Clause. We thus affirm the district court's dismissal of Bingham's claim.

---

[13] On appeal, Bingham has not identified a specific fundamental right, much less its legal basis. Nor has she alleged that a suspect classification is involved.

[14] For purposes of our analysis, we assume without deciding that a fundamental right under state law triggers strict scrutiny under the Equal Protection Clause. *See Gallivan v. Walker*, 2002 UT 89, ¶¶ 24, 81–83, 54 P.3d 1069 (plurality opinion) (relying on a state constitutional right to trigger strict scrutiny review under the Equal Protection Clause).